Jane Diehl and Ann Cluley *v.* Annie C. Rodgers, Sarah R. Rodgers, Jane E. Rodgers, Martha Rodgers, J. McA. Rodgers, Thomas E. Rodgers, Mary B. Pearson, Frank C. Pearson, Rev. R. Pearson and W. C. Pearson, Appellants.

*Evidence—Conviction for perjury—Effect of pardon.*

A pardon does away with the future consequences of a criminal act as completely as if it had never been committed.

The English distinction between the effect of a pardon after conviction of perjury at common law, and under the statute, cannot be sustained here. In Pennsylvania the power of pardon is given by the constitution with only one exception, and the legislature cannot make any further restrictions directly or indirectly.

A witness who has been convicted of perjury but pardoned by the governor is competent, notwithstanding the acts of March 31, 1860, and May 23, 1887.

*Credibility of pardoned perjurer—Question for jury.*

The credibility of such a witness however is for the jury, if either party asks that it be submitted to them.

*Criminal law—Effect of pardon—Distinction—Statutory and common law crimes.*

The early English distinction between the penal consequences of crime, whether by common law or by statute, has no basis in sound reason ; all penal consequences of crime are equally results of the transgression of the law, and even the common law consequences are historically presumed to be of statutory origin.

*Statute of wills—Signature by another when sustained.*

The conditions of the statute of wills are complied with where a decedent in extremity of last illness directs another to write out his testamentary directions and sign them, even if he was physically able to sign his name, if such signature would have been at the risk of his life.

Argued Nov. 2, 1894.    Appeal, No. 234, Oct. T., 1894, by defendants, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1894, No. 792, on verdict for plaintiffs.    Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.    Reargued Feb. 22, 1895, before the full court.    Affirmed.

Feigned issue to try the validity of the will of Robert C. Elliott.    Before MAGEE, J.

At the trial it appeared that the will was as follows : " My last will and testimony, being of sound mind.    All my house and everything I own to Mrs. Diehl, but $5000 cash to Mrs. Cluley."    It appeared from the evidence that decedent died at his residence, June 23, 1893.    On June 21st he was taken ill with hemorrhage of the stomach.    On the 22d his condition was critical, three doctors being in attendance.    Decedent demanding to know his condition was told he might die in fifteen minutes or an hour.    He then said to Robert H. Lindsay, a friend present in the room, " Bob, all this house and all I own to Mrs. Diehl, but $5,000 to Mrs. Cluley."    The witness, Lindsay, further testified that decedent directed him to write it down ; that he did so write it and read it to decedent, who responded, " That's right, that's what I want ; sign it."    That witness thereupon signed it, attested it with his own name as a wit-

ness, writing the three doctors' names as witnesses. Lindsay was corroborated by the doctors and by a Mr. Diehl present during part of the proceedings. The doctors testified that he might have signed it himself, but had been directed by them to keep quiet, and that he was in immediate expectation of death, and did in fact die next day at 11 A. M. This writing was offered for probate as decedent's will. The defendants offered no evidence except as to who were decedent's next of kin, which evidence was objected to and ruled out.

The plaintiffs and defendants each presented points calling for binding instructions. The court affirmed plaintiffs' point and directed a verdict for plaintiffs, [3] and refused defendants' point.[4] Defendants objected to admission of Lindsay's testimony on the ground of conviction for perjury ; plaintiffs admitted conviction but set up a full pardon by the governor. Objection overruled. [1, 2]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were, (1, 2) the admission of testimony ; (3, 4)ruling on points, as above, quoting them.

*James Fitzsimmons, James McF. Carpenter* and *W. D. Moore, John M. Rourke* with them, for appellants. One of the penalties of perjury is that the person convicted shall be forever disqualified from being a witness in any matter in controversy :— Acts March 31, 1860, P. L. 388, and May 23, 1887, P. L. 158. The rule that a pardon restores competency is limited to cases where the disability is a consequence of the judgment according to principles of common law, and not where the disability is attached by statute : 2 Russell on Crimes, 595 ; 11 Am. Jur. 360 ; Foreman v. Baldwin, 24 Ill. 298 ; Roberts' Digest of British Stats. 268 ; Wharton's Criminal Ev., 8th ed., sec. 265. The position of appellants is consonant with the constitution of Pa., art. 2, § 9 ; see also Ex parte McDonald, 2 Whart. 440 ; Schuylkill Co. v. Reefsneider, 46 Pa. 446 ; Aldrich v. Jessup, 3 Grant, 158. The position contended for is horn book law in England : Rex v. Greepe, 2 Salk. 513 ; Rex v. Crosby, Id. 689 ; Rex v. Ford, Id. 691 ; Dover v. Malstaer, 5 Esp. Rep. 92 ; Saunders on Pl. & Ev., vol. 2, p. 941 ; 1 Phillips on Ev. 24.

*J. S. Ferguson, E. G. Ferguson, Clarence Burleigh* and *John R. Harbison* with him, for appellees.—The effect of the governor's pardon of one convicted and sentenced for an infamous offense is to restore his competency as a witness: United States v. Wilson, 7 Peters, 150 ; Ex parte Wells, 59 U. S. 315; Cope v. Com., 28 Pa. 303; Perkins v. Stevens, 41 Mass. 280 ; 2 Starkie on Evidence, 715–720; Ex parte Garland, 71 U. S. 333 ; Hoffman v. Coster, 2 Whart. 453; Howser v. Com., 51 Pa. 332; Com. v. Green, 17 Mass. 513.

OPINION BY MR. JUSTICE MITCHELL, July 18, 1895:

The main question is the competency of the witness Lindsay who had been convicted of perjury, but pardoned by the governor prior to the events to which he testified.

The general rule is that a pardon does away with the future consequences of the criminal act, as completely as if it had never been committed.   It is said in a case which will be noticed more fully hereafter (1 Parker's [N. Y.] Crim. Rep. 241) that the doctrine of restoration of competency is modern, and that the authority of COKE is against it, but that later HOLT and others established it.   Passing by the obvious doubt whether any doctrine established by Lord Chief Justice HOLT can fairly be called modern, we find that what COKE says in Browne v. Crashaw, 2 Bulst. 154, is, citing 11 Henry 4, fol. 41*b*, that one attainted of felony but pardoned, is not a competent witness, for *poena mori potest, culpa perennis erit.*   The authorities however, are unanimously against this maxim.   " If the king pardon these offenders they are thereby rendered competent witnesses, though their credit is to be still left to the jury, for the king's pardon takes away *poenam et culpam in foro humano :* " 2 Hale's Pleas of the Crown, 278.   " It is now settled that a pardon removes not only the punishment, but all the legal disabilities consequent on the crime : " 2 Russell on Crimes 975 ; 7 Bacon's Abridg., tit Pardon, H. (Bouvier's 12th ed. p. 416.)

In England however a special exception is made in the case of perjury, where a distinction is taken between conviction on an indictment at common law, and on an indictment under the statute of 5 Eliz. cap. 9, which declares that no person so convicted shall thenceforth be received as a witness to be deposed and sworn in any court of record until such judgment be re-

versed : 2 Russell on Crimes, 604.   The distinction appears to
have been first made by Lord C. J. HOLT, who in Rex v. Greepe,
2 Salk. 514, says " where one is convict upon the statute it is
part of the judgment to be disabled (to be a witness) but at
common law it is only a consequential disability," and he accord-
ingly held that the king's pardon removed the latter disability
but not the former.   This ruling he repeated in Rex v. Crosby,
2 Salk. 689 ; Rex v. Ford, 2 Salk., 691 ; and Anon., 3 Salk. 155.
It is now accepted as the settled law in England.   " A pardon
removes not only the punishment, but all the legal. disabilities
consequent on the crime . . . . wherever the disability is a
consequence of the judgment; but where it is declared by an
act of parliament to be part of the. punishment, as in the case
of perjury on the 5 Eliz. c. 9, the king's pardon will not make
the witness competent: " 2 Russell on Crimes 975.

The American text writers have generally followed this dis-
tinction without question, and apparently without much con-
sideration.   The ablest discussion to be found is in an article
published in 1834 in 11 American Jurist, 356, signed " G,"
which perhaps may be safely conjectured to be by Prof. Green-
leaf, who was then writing his work on Evidence, in which he
adopts the same view and quotes the article at considerable
length.   The writer, whether Greenleaf or another, follows the
English distinction, but says with accurate logic and great can-
dor " the soundness of the reason is not as apparent as the just-
ness of the exception. . . . If the culprit be sentenced to a fine
and imprisonment and the pillory and the whole offense is par-
doned, by what authority shall any of these punishments be
inflicted?   And if instead of the pillory he is sentenced to inca-
pacity as a witness, is the case altered?   The pardon takes away
the effect of the judgment, and nullifies all its consequences.
Of what importance is it then whether the incapacity makes
part of the judgment by statute, or follows it by the common
law?. . . . It would be more satisfactory therefore if a reason
for this exception could be found independent of the form in
which the sentence may have been awarded."   Instead however
of pursuing the true course and where the reasons of a rule are
altogether unsatisfactory, inquiring carefully into the sound-
ness of the rule itself, ratio legis anima legis, he proceeds ingen-
iously to find a reason in the idea that while the disqualification

to be a witness is a part of the punishment, and may operate severely against the convict, yet it may also be regarded as a rule of evidence which is within the legislative province to adopt or remove.

The American courts however have not accepted the rule or its reasons as unquestioningly as the text writers. The diligence of counsel, and my own investigation have only succeeded in finding two cases which have followed the English rule. In Houghtaling v. Kelderhouse, 1 Parker (N. Y.) Crim. Rep. 241, the point was expressly raised and decided, on the line of argument and largely on the authority of the article in the American Jurist above quoted, but also on the words of the New York statute, that one convicted of perjury shall not be received as a witness unless the judgment be reversed, while in regard to other offenses the incompetency is declared unless pardoned, showing that the legislature had pardons in contemplation, a point that will be noticed hereafter in connection with our own statute. The other case is Foreman v. Baldwin, 24 Ills. 298, which simply rules the point on the English cases without discussion, saying that competency can only be restored by the legislature, and adding the surprising statement that "at every session there are applications of this character." In Holridge v. Gillespie, 2 Johns. Ch. 35, the point appears, but so briefly as a mere note at the end of the report, that no satisfactory evidence can be got from it of the views of the chancellor, KENT.

On the other hand in Perkins v. Stevens, 41 Mass. 277, it was held that a general pardon would unquestionably restore competency destroyed by conviction of forgery, and while the court held the pardon in that case to be only limited and partial, yet they say that the statute providing that a pardon should not restore qualification for office " unless expressly so ordered by the terms of the pardon " plainly " acknowledges the power of the executive to remove even the statute disqualification." In Wood v. Fitzgerald, 3 Oregon, 568, it was held that the power of pardon given by the constitution being without limitation, a full pardon would restore the right to vote to one who had been convicted of arson, though the constitution itself declared that the privileges of an elector should be forfeited by conviction of any crime punishable by imprisonment in the penitentiary.

VOL. CLXIX—21

These are the only decisions on the particular point, but in the long roll of cases, especially in our own state and in the Supreme Court of the United States, where the general subject has been most frequently and ably discussed from a great variety of points of view, there is nowhere any hint of such a restriction on the effect of a pardon. In Hoffman v. Coster, 2 Whart. 453, where the offense was passing counterfeit money, it is said, p. 468, " One of the consequences resulting from the sentence was the disability of the party to be sworn as a witness ; and when all the sentence is removed, together with the consequences of the sentence, except what had been suffered, this disability is removed. It cannot exist separate from the source from which it is derived." And the general effect of all the cases is thus stated in Ex parte Garland, 71 U. S. 333, 380. " A pardon reaches both the punishment prescribed for the offense and the guilt of the offender, and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. . . . It removes the penalties and disabilities, and restores him to all his civil rights."

In this position of the adjudicated cases, we are left free to follow what seem to us the sounder and more weighty reasons. The English distinction is not substantial. All penal consequences of crime whether by common law or by statute are equally results of the transgression of the law, and even the common law consequences are historically presumed to be of statutory origin. There is no basis in sound reason for including one and excluding the other from the power to pardon. The reason assigned by COKE was repudiated by HOLT ; the reason substituted by HOLT is shown by the writer in the American Jurist, already quoted, to be equally unsatisfactory ; and with deference to the latter's evident learning and ability, his reason is little better. Mr. Hargrave in a very learned and elaborate discussion of this subject of competency, unfortunately not extending to the consideration of convictions on the statute, suggests a reason which is explanatory if not convincing. " Where parliament imposes a disability, to attribute to the king singly a power of removing it, might at least approach to the assertion of a dispensing power in the crown," referring to

the great case in the reign of James 2d on the power of dispensing with the test act : 2 Hargrave's Juridical Arguments, 224. The king's prerogative of pardon is by the common law, but an act of parliament is supreme, and can change the common law in respect to prerogative as well as to other matters, and if it has done so, the prerogative is thereafter limited accordingly.

This reason cannot apply to the American states under written constitutions, which are superior to the legislative power. The constitution of the United States gives the president power to grant pardons except in cases of impeachment, and " the power thus conferred is unlimited with the exception stated, . . . . it is not subject to legislative control. Congress can neither limit the effect of his pardon, nor exclude from its exercise any class of offenders. The benign prerogative of mercy reposed in him cannot be fettered by any legislative restrictions:" Ex parte Garland, 71 U. S. 333, 380. It is true there was a strong dissent in that case by nearly half the court, but it was based on the questions whether the qualifications of attorneys were matters for legislative or judicial control, and whether a disqualification imposed on an attorney by statute after his admission was an ex post facto law. There was no difference of opinion as to the power of pardon or the effect of its exercise upon all parts of the penalty or punishment.

The constitution of Pennsylvania gives the governor the same unlimited power of pardon with the same single exception of cases of impeachment, though the exercise of the power is controlled by the condition precedent of a recommendation by certain officers conveniently known as the board of pardons. The constitution deals with the pardoning power not as a prerogative claimed by divine right, but as an adjunct to the administration of justice, recognized in all civilized governments as necessary by reason of the fallibility of human laws and human tribunals. The power so recognized is granted without distinction in regard to offenses or their consequences, and with no exception or limitation but the one noted, of impeachment. The fact that one is made shows that the subject of exceptions was considered, and therefore expressio unius exclusio alterius est. The power cannot now be further restricted, or its operation limited by legislation.

Nor in fact has any such restriction been attempted.    There is no conflict between the statute and the executive act in this respect any more than in any other.    The act of 1860 says the person convicted of perjury " shall be forever disqualified from being a witness in any matter in controversy,"  but it also says he shall be fined and imprisoned.    Both are statutory consequences of the conviction, and the remission of one is no more a violation of the statute than the remission of the other.    The statute does not say in either case, " unless he shall be pardoned," because the legislature in enacting the statute was not contemplating the exceptional case of a pardon, nor considering its effect on any part of the act.    The word " forever " was introduced in the disqualification not with any reference to the effect of a pardon, but to show that it was not merely to run with the term of imprisonment, and to concur with the exception of the case of perjury in section 181 of the same act, providing that the endurance of the punishment shall have the effect of a pardon.    The result of the two sections read together is that nothing shall remove the disqualification except a pardon, and this is the intent indicated by the commissioners who reported the criminal code, when they say that section 181 is new, and the object was previously attained through the pardon of the governor: Report, Purdon's Dig. ed. 1894, p. 563, note.

The same views apply to the act of May 23, 1887, P. L. 158, relating to the competency of witnesses, etc.    That is a careful revision and consolidation, by a very competent hand, of the whole law on the subject, and when in section 5 it provides that a person convicted of perjury shall not be a competent witness although his sentence may have been fully complied with, etc., it merely continues the law of the two sections of the act of 1860 already discussed, with an express provision as to the effect of a reversal of the conviction, which would have been the legal result even without such expression, and a humane exception in cases of injury to the convict's person or property. But this act did not, any more than the previous one, have any reference to the effect of a pardon.

Even if this were less clear than it is as a matter of statutory construction, the argument ab inconvenienti would be very strong.    Suppose Lindsay was the only witness to a murder, must justice be baffled because of his disability ?    And yet how

is it to be removed if not by a pardon? It is said in 24 Ills. 298, cited supra, that applications are made in that state to the legislature. Besides the practical difficulties in the delay and the running of the statute of limitations there would be other objections in this state. If such application be regarded as a pardon, the power is in the governor, not the legislature, and if it be regarded as a law, then it is special, and must run the gauntlet of the prohibitions against special laws relating to practice and evidence in judicial proceedings.

For each and all of these reasons we are of opinion that Lindsay was a competent witness, and the learned court below was right in admitting his testimony.

On the other points we have had some doubt as to the propriety of directing a verdict for the plaintiff, but are not convinced that it was error. The issue was one in which the judge sat as a chancellor, and both parties treated it as a question of law, and requested binding instructions. The exceptions and assignments of error as to this are not that the judge directed a verdict but that he directed it for the plaintiff instead of the defendant. If Lindsay was a competent witness and was believed, the requisites of the statute as to wills were complied with. His credibility was for the jury if either party had asked that it be submitted, but neither did so.

We do not see any sound reason to question the result. The testator was in full possession of his faculties of mind, and had strength of body to sign the will, but he had the injunction of the physicians to keep quiet, enforced by the information that if he had another hemorrhage he might die in fifteen minutes. He ordered his will written, and when it was done ordered it signed. Undoubtedly he was physically able to sign it himself, but at a risk to his life that he was not bound and could not be expected to take. All the evidence shows an extremity of a last sickness of which the testator was aware, and which he met with notable clearness and resolution. The case belongs to the class which the statute was meant to provide for.

Nor is there any reason to doubt that he meant his directions for a will, and regarded it as fully executed. He desired to know his condition, and after consultation his physicians informed him he might die in fifteen minutes and if he had any worldly matters to settle he had better do so. He at once gave his

clerk the directions, had them written down, and when read to him, said they were what he wanted, and ordered the paper signed. His acts do not admit of any other meaning than that he intended to make a will and believed he had done so.

Judgment affirmed.