UNITED STATES ex rel. SEIPLE v. BYERS, Warden.

(District Court, E. D. Pennsylvania. February 22, 1904.)

No. 33.

1. FEDERAL CONVICTS—GOOD CONDUCT—STATE LAWS—APPLICATION.

Rev. St. § 5544 [U. S. Comp. St. 1901, p. 3721], declares that the preceding section, providing the commutation to which federal convicts may be entitled for good conduct, shall apply to such prisoners only as are confined in jails or penitentiaries where no credits for good behavior are allowed; but in other cases all prisoners confined in jails or penitentiaries of any state for offenses against the United States shall be entitled to the same "rule of credits" for good behavior applicable to other prisoners in the same jail or penitentiary. *Held*, that Act Pa. 1901 (P. L. 166), allowing a specified commutation, but making such allowance conditional on the act of the Governor of the state, approved by the board of inspectors or managers of Pennsylvania penitentiaries, did not prescribe a "rule of credits," but rather a commutation of sentence to be exercised at the discretion of state officers, and was therefore not applicable to federal prisoners.

127 F.—63

E. Cooper Shapley, for relator.

James B. Holland and J. Whitaker Thompson, for respondent.

J. B. McPHERSON, District Judge. The relator was sentenced by this court in May, 1899, to five years' imprisonment in the Eastern Penitentiary. He now asks to be discharged on the ground that the Pennsylvania act of 1901 (P. L. 166), relating to the commutation of sentences, applies to federal prisoners as well as to prisoners confined under the sentence of a state tribunal. In view of the thoroughly satisfactory opinion of the Attorney General of the United States, given on June 7, 1901, there is no need for further discussion of the Pennsylvania statute. I entirely agree with his conclusion that the act of 1901 does not furnish such a "rule of credit" as is required by section 5544 of the Revised Statutes [U. S. Comp. St. 1901, p. 3721], and is therefore inapplicable to federal prisoners, whether they were sentenced before or after the passage of the act. I take the liberty of adopting his letter of June 7th to the United States attorneys in Pennsylvania, as the opinion of this court:

"Sir: I am in receipt, from the Secretary of the Commonwealth of Pennsylvania, of an act of the Assembly approved May 11, 1901, which provides for the commutation of sentences for good behavior of convicts in prisons, penitentiaries, and workhouses of the state of Pennsylvania. The act allows a commutation of two months for the first year, three months for the second, four months each for the third and fourth years, and five months for each subsequent year.

"An examination of the act discloses the fact that the reduction is not a fixed commutation, but depends, both as to its allowance and the amount thereof, upon the discretion of the Governor of Pennsylvania. Section 1 of the act provides that:

" 'Every convict * * * may, if the Governor shall so direct, and with the approval of the board of inspectors or managers, earn for himself or herself a commutation or diminution of his or her sentence or sentences, as follows:'

"By section 3 it is provided:

" 'On any day not later than the twentieth day of each month, the board of inspectors or managers, or the warden, superintendent, or keeper of each of the state prisons, penitentiaries, workhouses, or county jails of this state shall forward to the Governor a report, directed to him, of any convict or convicts who may be discharged the following month by reason of the commutation of his or her sentence or sentences, which shall contain the following information,' etc.

"By section 4 it is provided that the Governor shall, in commuting the sentences of convicts as provided for in this act, annex certain conditions as to their future good behavior; and by section 5 it is provided that the—

" 'Boards of inspectors and managers of the state prisons, penitentiaries, workhouses, and county jails in this state shall meet once every month, before the date fixed for transmission of their report to the Governor, as hereinbefore provided, and proceed to determine the amount of commutation which they shall recommend to be allowed to any convict, which shall not in any case exceed the amount fixed by this act. They shall have full discretion to recommend the withholding of allowance of commutation for good conduct or of a part thereof as a punishment for offences against the discipline of the prison, penitentiary, or county jail, or for any attempt to escape therefrom. In all cases, however, where the board shall recommend the withholding of the allowance of the whole or any part of the commutation for good conduct, they shall forward with their report to the Governor their reasons, in writing for such disallowance, and the Governor may, in his discretion, decrease or increase the amount of commutation as recommended by

the said board, but he shall not increase the same beyond the amount fixed by this act: provided, however, that the Governor shall not execute any of the rights or powers herein granted unto him until the Lieutenant Governor, Secretary of the Commonwealth, Attorney General, and the Secretary of Internal Affairs, or any three of them, after full hearing, upon due public notice, and in open session, according to such rules as they shall provide, shall have recommended the said commutations and diminutions of sentences.'

"This act of Assembly cannot of its own force have any application whatever to prisoners in prisons or penitentiaries in the state of Pennsylvania who are serving under sentences pronounced by courts of the United States. It is not within the power of the Legislature of Pennsylvania to affect, in any wise, the execution of a sentence imposed by United States courts.

"Section 5543 of the Revised Statutes of the United States provided the commutation to which United States prisoners may be entitled by good conduct. It allowed a deduction of one month in each year, 'upon the certificate of the warden or keeper of such jail, or penitentiary, with the approval of the Attorney General.'

"It is, however, provided by section 5544 of the Revised Statutes that—

" 'The preceding section, however, shall apply to such prisoners only as are confined in jails or penitentiaries where no credits for good behavior are allowed; but in other cases all prisoners now or hereafter confined in the jails or penitentiaries of any state for offences against the United States shall be entitled to the same rule of credits for good behavior applicable to other prisoners in the same jail or penitentiary.'

"By the act of March 3, 1875 [18 Stat. 480, c. 145; U. S. Comp. St. 1901, p. 3722], all United States prisoners whose sentence of imprisonment is at least six months, and who are confined—

" 'In any prison or penitentiary of any state or territory which has no system of commutation for its own prisoners, shall have a deduction from their several terms of sentence of five days in each and every calendar month during which no charge of misconduct shall have been sustained against each severally, who shall be discharged at the expiration of his term of sentence less the time so deducted, and a certificate of the warden or keeper of such prison penitentiary of such deduction shall be entered on the warrant of commitment,' etc.

"A careful consideration of these sections, in connection with the Pennsylvania act of May 11, 1901, suggests the following question:

"Is the commutation provided by the Pennsylvania act of May 11, 1901, a 'rule of credit' within the meaning of section 5544 of the Revised Statutes?

"I am, after careful consideration, of the opinion that a discretionary commutation, such as that provided by the Pennsylvania act, is not a rule of credit within the meaning of Rev. St. § 5544. The very expression 'rule of credit' necessarily implies a fixed and ascertained system which is not dependent upon the judgment or caprice of an individual, but which applies to all of a given class upon some definite principles. I do not mean to intimate that the mere fact that the good behavior of a convict is the condition of commutation, and that that must be ascertained by the judgment of an individual, necessarily invalidates the commutation, or makes it less a rule of credit. Some official must be given the discretion to determine whether the convict has by good conduct earned the commutation provided by law. It would seem, however, that those only can definitely ascertain the fact of good conduct who are brought into direct relations with the prisoners. The Pennsylvania act, therefore, imposes upon the prison officials, in the first instance, the duty 'to determine the amount of commutation * * * to be allowed to any convict.' Such commutation might be a rule of credit, within the meaning of the Revised Statutes of the United States, if the only discretion as to the allowance of the commutation was that of the prison inspectors who, by reason of their office, would ascertain with reasonable certainty the fact of good behavior.

"That Congress had such a commutation in mind is also shown by the amendatory act of March 3, 1875, which provides for a commutation of five days in each calendar month, 'during which no charge of misconduct

shall have been sustained against each severally,' and which provides that 'a certificate of the warden or keeper of such prison penitentiary of such deduction shall be entered on the warrant of commitment.'

"Such a commutation, while necessarily dependent upon the judgment of the warden as to the fact of good behavior, yet proceeds upon definite principles, and is a matter of official record.

"It is obvious, however, that the Pennsylvania act does not leave this question to the prison officials. Their judgment is not final. Indeed, their conclusion as to whether any credit shall be allowed to a prisoner, and, if so, the amount thereof, is advisory only. In the language of the act, they 'proceed to determine the amount of commutation which they shall recommend to be allowed to any convict,' and such recommendation is to be sent once every month to the Governor, who 'may, in his discretion, decrease or increase the amount of the commutation as recommended by said board.'

"Even here the discretionary nature of the commutation does not end, for the act further provides that even the Governor may not decrease or increase the amount of the commutation 'until the Lieutenant-Governor, Secretary of the Commonwealth, Attorney-General, and the Secretary of Internal Affairs, or any three of them, after full hearing, upon due public notice and in open session, according to such rules as they shall provide, shall have recommended the said commutations and diminutions of sentences.'

"This method of procedure is precisely the method provided by the existing statutory laws of Pennsylvania for the pardon of offenses. It employs the agency of what is known as the 'Pardon Board,' and it vests the discretion as to whether any commutation should be allowed, and, if so, in what amount, in the Governor of the state. Probably there was reason for this method of allowing the commutation. The Legislature of Pennsylvania may have supposed, and it seems to me with reason, that any commutation which was independent of the action of the Governor would be an undue trespass upon his high prerogative of executive clemency.

"Unquestionably every commutation is a species of pardon, and the fact that in Pennsylvania all such commutations have only been allowed with the concurrence of its chief executive justifies the conclusion that under the constitutional system of that state the Legislature could not by law reduce any sentence, and that any system of commutation could only be in the exercise of the pardoning power which had been vested in the Governor by and with the advice of the board of pardons.

"In the case of Commonwealth ex rel. Johnson v. Halloway, 42 Pa. 446 [82 Am. Dec. 526], an act of the Legislature of Pennsylvania, which provided for a graduated deduction from sentences for good behavior, was held to be unconstitutional by the Supreme Court of that state, on the ground that it was an interference with the judicial power of the commonwealth, which had been vested by the Constitution of that state in the judicial department of the government.

"In this connection, reference may also be made to the comparatively recent case of Diehl v. Rodgers, 169 Pa. 316–323 [32 Atl. 424, 47 Am. St. Rep. 908], in which the Supreme Court of Pennsylvania discusses the incompetency of the legislative department to restrict the prerogative of executive clemency. After quoting the language of the Supreme Court of the United States in Ex parte Garland, to the effect that Congress can neither limit the effect of his (the President's) pardon, nor exclude from its exercise any class of offenders, Mr. Justice Mitchell continues:

" 'The Constitution of Pennsylvania gives the Governor the same unlimited power of pardon, with the single exception of cases of impeachment, though the exercise of the power is controlled by the condition precedent of a recommendation by certain officers conveniently known as the "Board of Pardons." The Constitution deals with the pardoning power, not as a prerogative claimed by divine right, but as an adjunct to the administration of justice, recognized in all civilized governments as necessary by reason of the fallibility of human laws and human tribunals. The power so recognized is granted without distinction in regard to offenses or their consequences, and with no exception or limitation but the one noted—of impeachment. The fact that one is made shows that the subject of exceptions was con-

sidered, and therefore, "Expressio unius, exclusio alterius est." The power cannot now be further restricted, or its operation limited by legislation.'

"Under the Pennsylvania act there is, in my opinion, no fixed 'rule of credit,' in the proper sense of the term. The prison inspectors recommend, in their discretion, a certain diminution of the sentence for good behavior. The act then provides: 'Every convict * * * may, if the Governor shall so direct, and with the approval of the board of inspectors or managers, earn for himself or herself a commutation or diminution of his or her sentence or sentences,' etc.

"It is thus apparent that though the behavior of a convict be above criticism, and though the prison officials certify to the excellence of his conduct while in their custody, yet the Governor may refuse, at his pleasure and in his discretion, to grant the commutation. And such exercise of discretion, assuming the power to be vested in him, might in many instances be entirely justified, for good behavior while in custody does not necessarily justify the conclusion that a given convict ought to be released. It is a matter of common experience to those familiar with the science of penology that often the worst offenders against the laws are the best-behaved convicts, and those who are least guilty fret under the unaccustomed restraint of prison life and violate its discipline; and the Governor might well reach the conclusion, in any particular case, that a habitual criminal, who had been repeatedly pardoned for previous offenses, should not be released before the expiration of his term, even though his conduct while in prison had been above reproach, and a favorable recommendation had been made by the prison officials.

"This distinction, however, is emphasized in section 5, which provides that the board of inspectors of prisons 'shall have full discretion to recommend the withholding of the allowance of commutation for good conduct, or of a part thereof, as a punishment for offences against the discipline of the prison, or for any attempt to escape therefrom.' In such case they are to give their reasons in writing for such disallowance, and the act then provides that the 'Governor may, in his discretion, decrease or increase the amount of commutation as recommended by said board.'

"Thus two convicts may each have been recommended for commutation, but the Governor may deny to one the remission of sentence which he grants to the other. In my opinion, such a discretionary exercise of clemency cannot be regarded as a 'rule of credit.'

"I do not question in any respect the policy of the Pennsylvania act of Assembly or the wisdom of its provisions. With that I have nothing whatever to do. Nor do I question the power of the state of Pennsylvania to provide for its own prisoners a system of commutation which is discretionary in its nature. With that I have nothing whatever to do. I am, however, of opinion, reached after due deliberation and with some reluctance, that the system of commutation provided by the act of May 11, 1901, is not a 'rule of credit' within the meaning of Rev. St. § 5544. If such a system were within the purview of the section cited, I should be disposed to question its constitutionality, for I cannot believe that it is competent for Congress either itself to trespass, by legislative enactment, upon the power of the President under article 2, section 2, paragraph 1, of the Constitution, 'to grant reprieves and pardons for offences against the United States,' or to delegate a power, which in no substantial respect differs from that of executive clemency, to a state Legislature.

"If a statute be susceptible of two constructions, one of which is constitutional and the other unconstitutional, that construction should be favored which saves the validity of the act. Upon this well-settled rule of construction, I prefer to so construe Rev. St. § 5544, as to exclude from its purview any system for the remission of sentences which is dependent upon the pleasure of the pardoning power of a state. To hold the contrary would be in effect to concede that Congress could delegate the pardoning power in the matter of federal prisoners to the Governor of a state. No one would pretend that Congress could pass a law which would in effect provide that any United States prisoner could be pardoned, or have his sentence commuted, by the Governor of a state in which he is imprisoned, and yet in the last

analysis this is precisely what the Pennsylvania act provides. It is not necessary to impute such an intention to Congress. In the absence of judicial construction, it is safer to conclude that Congress had in mind a system of commutation which, proceeding upon fixed standards and not dependent upon the mere pleasure of an official, could properly be called a 'rule of credit.'

"The Pennsylvania act suggests another and more serious question— whether any commutation can have any application in our constitutional system to sentences previously imposed. Upon principle and authority, a commutation is, in effect, the exercise of the pardoning power, at least so far as pre-existing sentences are concerned. The power of the legislative department of the government to thus affect the action of the judicial and the prerogative of the executive has been questioned in many states.

"In Commonwealth v. Halloway, 42 Pa. 442 [82 Am. Dec. 526], such laws were held to be an unconstitutional trespass upon the judicial power of the government. In the cases of In re Victor, 31 Ohio [St.] 206; Lee v. Murphy, 22 Grat. 799 [12 Am. Rep. 563]; Diehl v. Rodgers, 169 Pa. 316 [32 Atl. 424, 47 Am. St. Rep. 908]; Haley v. Clark, 26 Ala. 439; People v. Moore, 62 Mich. 496 [29 N. W. 80]; State v. Sloss, 25 Mo. 291 [69 Am. Dec. 467]; Tennessee v. Fleming, 7 Humph. 152 [46 Am. Dec. 73]—the highest courts of Ohio, Virgina, Pennsylvania, Alabama, Michigan, Missouri, and Tennessee have said, in effect, that a commutation was a species of pardon, and in the Alabama, Michigan, and Missouri cases the court declared invalid acts of the Legislature which attempted to affect sentences of the courts in criminal cases.

"The conclusion which I have reached, that the Pennsylvania act of May 11, 1901, does not provide a 'rule of credit' within the meaning of Rev. St. § 5544, makes it unnecessary for me to express any opinion as to whether commutation laws can affect pre-existing sentences.

"You are authorized and directed to advise the appropriate officials of any penitentiary or prison in your district in which United States prisoners are now confined that the government cannot recognize their right to discharge any United States prisoner by virtue of the commutation provided by the act of May 11, 1901.

"As the Pennsylvania act repealed the system of commutation theretofore enforced in the state of Pennsylvania, there would not seem to be any system of commutation under the state laws now applicable to United States prisoners under Rev. St. § 5544. The commutation provided by Congress in the act of March 3, 1875 [18 Stat. 479, c. 145], 1 Supp. Rev. St. 89 [U. S. Comp. St. 1901, p. 3722], therefore, becomes applicable to such prisoners, and the government will recognize such allowance when made in accordance with the provisions of the act.

"You are directed to advise the officials of such prisons or penitentiaries that any discharge of any United States prisoner under the act of May 11, 1901, or otherwise than as stated in this opinion, will be at their peril.

"Very respectfully        P. C. Knox, Attorney General."

Since the foregoing letter was written, Congress has acted upon the subject, and has passed the act of June 21, 1902, c. 1140, 32 Stat. 397 [U. S. Comp. St. Supp. 1903, p. 448], which now applies to all sentences imposed after July 21, 1902.

The relator is remanded to the custody of the warden; but, as the government concedes that his term of imprisonment ended a few days ago by the application of the federal statutes concerning commutation, he is entitled to be discharged from custody at once, on payment of costs, or on taking the proper steps under the insolvent act of the state.