### UNITED STATES et al. v. JACKSON.

### SAME v. McKERRACHER.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1906.)

Nos. 1,251, 1,253.

1. STATUTES—CONSTRUCTION—RULES GOVERNING.
   In construing a statute of the United States, the courts should search out and follow the true intent of Congress, and adopt the sense of the words which harmonizes best with the context and promotes in the fullest manner the apparent policy and object of the legislation.
   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 259, 262.]

2. SAME—CONFLICTING PROVISIONS.
   When one section of a statute treats specially and solely of a matter, that section prevails in reference to that matter over other sections in which only incidental reference is made thereto.
   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, § 284.]

3. SAME.
   When words occur in a statute which can be given no effect consistent with the plain intent of the statute, they must be rejected as without meaning.
   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, § 266.]

4. SAME.
   It is a well-settled rule of construction that, where there is an irreconcilable conflict between different parts of the same act, the last in the order of arrangement will control.
   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, § 284.]

5. SAME—RETROSPECTIVE CONSTRUCTION.
   A statute is never to be construed retrospectively, unless the language of the act shall render such construction indispensable.
   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, § 344.]

6. PRISONS—ALLOWANCE FOR GOOD TIME—FEDERAL STATUTE.

Act June 21, 1902, c. 1140, 32 Stat. 397 [U. S. Comp. St. Supp. 1905, p. 731] provides, in section 1, that "each prisoner who has been, or shall hereafter be, convicted of any offense against the laws of the United States, and is confined" in execution of the judgment, shall be entitled to an allowance of good time as therein specified. Section 3 (32 Stat. 398 [ U. S. Comp. St. Supp. 1905, p. 731]) expressly provides that the act "shall apply only to sentences imposed by courts subsequent to the time when this act takes effect," and that prisoners sentenced prior to such time shall be entitled to the commutation theretofore allowed under existing laws. *Held*, that the language of the first section was very probably intended to make the act applicable to cases of prisoners convicted before it became operative, but not sentenced until afterward; but that, in any event, the third section, being the later and also the more specific, must govern, and the act did not apply to prisoners sentenced before it took effect.

Appeals from the Circuit Court of the United States for the Northern Division of the Western District of Washington.

For opinion below, see 140 Fed. 266.

Jesse A. Frye, U. S. Atty., Alfred E. Gardner, Asst. U. S. Atty. (Edward E. Cushman, Special Asst. to Atty. Gen., of counsel), for appellants.

Richard Saxe Jones and Wm. H. Brinker, for appellee Jackson.

J. B. Metcalfe and John S. Jurey, for appellee McKerracher.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. These appeals present the same question and will be considered together. The appellees were prisoners confined in the United States penitentiary on McNeil's Island in the state of Washington, and petitioned the court below for a writ of habeas corpus, claiming that under the laws of the United States they had fully served their time, and were entitled to be discharged. Appellee Jackson was convicted in the District Court of Alaska of the crime of attempting to commit murder, and on the 6th day of January, 1899, was sentenced to a period of 10 years in said penitentiary. He arrived at the penitentiary January 13, 1899. Appellee McKerracher was convicted for a violation of the national banking laws in the United States court at Seattle, Wash., and on the 14th day of January, 1902, was sentenced to the penitentiary for a period of five years. He arrived at the penitentiary on January 15, 1902. Both of the appellees fully complied with the rules of the penitentiary during their imprisonment therein. The court issued the writ and held that under the act of Congress passed June 21, 1902 (chapter 1140, 32 Stat. 397 [U. S. Comp. St. Supp. 1905, p. 731]), the petitioners had fully served the time for which they were sentenced, and ordered them discharged. From these orders the appeals herein are taken.

This law reads as follows:

"An act to regulate commutation for good conduct for United States Prisoners. * * * That each prisoner who has been or shall hereafter be convicted of any offense against the laws of the United States, and is confined, in execution of the judgment or sentence upon any such conviction, in any United States penitentiary or jail, or in any penitentiary, prison, or jail of

any state or territory, for a definite term, other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence to be estimated as follows, commencing on the first day of his arrival at the penitentiary, prison, or jail: Upon a sentence of not less than six months nor more than one year, five days for each month; upon a sentence of more than one year and less than three years, six days for each month; upon a sentence of not less than three years and less than five years, seven days for each month; upon a sentence of not less than five years and less than ten years, eight days for each month; upon a sentence of ten years or more, ten days for each month. When a prisoner has two or more sentences, the aggregate of his several sentences shall be the basis upon which his deduction shall be estimated.

"Sec. 2. That in the case of convicts in any United States penitentiary, the Attorney General shall have the power to restore to any such convict who has heretofore or may hereafter forfeit any good time by violating any existing law or prison regulation such portion of lost good time as may be proper, in his judgment, upon recommendations and evidence submitted to him by the warden in charge. Restoration, in the case of United States convicts confined in state and territorial institutions, shall be regulated in accordance with the rules governing such institutions, respectively.

"Sec. 3. That this act shall take effect and be in force from and after thirty days from the date of its approval, and shall apply only to sentences imposed by courts subsequent to the time that this act takes effect, as hereinbefore provided. Prisoners serving under any sentence imposed prior to such time shall be entitled and receive the commutation heretofore allowed under existing laws. Such existing laws are hereby repealed as to all sentences imposed subsequent to the time when this act takes effect."

Did the court err in its construction of this act, and in discharging appellees from the custody of the marshal? The vital question to be decided is whether the act in its entirety applies to all federal prisoners, to those convicted and sentenced before the passage of the act, as well as to those convicted and sentenced after its passage. Is there an irreconcilable conflict between sections 1 and 3 of the act, and, if so, which section must prevail?

The fundamental rule in the construction of statutes is to ascertain the intention of the lawmakers. It is only in statutes of doubtful meaning that courts are authorized to indulge conjectures as to the intention of the Legislature, or to look to consequences in the construction of the law. When the meaning is plain the act must be carried into effect. Another canon of construction is that every part of a statute must be viewed in connection with the whole, so as to make all the parts harmonious, if practicable, and to give a sensible and intelligible effect to each; nor should it ever be presumed that the Legislature meant that any part of a statute should be without meaning or without force and effect. The act itself must be presumed to speak the will of Congress, and this is to be ascertained, if it can be, from the language used. It is the duty of the courts to examine the language of the act and ascertain its object and purpose. We are of opinion that from the whole act it is manifest that Congress intended that its provisions should apply to the future, not to the past.

The question as to the proper construction of this act has been decided in four cases. The Circuit Court of New York, in Re Walters, 128 Fed. 792, held that the act did not apply to prisoners sentenced before the enactment of the law. The District Court of Vermont, in

143 F.—50

Re Farrar, 133 Fed. 254, held that the first section of the act was controlling, and that it applied to all prisoners, whether sentenced before or after the enactment of the law. An appeal was taken to the Circuit Court of Appeals for the Second Circuit, and that court reversed the order made by Judge Wheeler, and held that the act did not apply to prisoners sentenced before its passage. United States v. Farrar, 139 Fed. 260.

In the present cases Judge Hanford held that the act did apply to the appellees, who had been convicted and sentenced prior to the passage of the act, and ordered the prisoners discharged. In so ruling we think the learned judge erred.

Appellants claim that the words "has been or" and "is," as used in the first section, were inserted upon the theory that there would probably be prisoners convicted before the act became operative, but not sentenced until after the act took effect, and that these words were used so as to prevent any uncertainty as to the applicability of the law to such prisoners. It frequently happens from various causes that considerable time elapses between the conviction and the sentence, and it is not unreasonable to presume, in the light afforded by the entire section, that these words were intended to apply to such cases. Of course, if this construction is given to the words, it would make the entire act harmonious. Courts should search out and follow the true intent of Congress, and adopt "the sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and object of the legislation." United States v. Winn, 3 Sumn. 209, Fed. Cas. No. 16,740; United States v. One Raft of Timber (C. C.) 13 Fed. 796; The Lizzie Henderson (D. C.) 20 Fed. 524, 529; United States v. Ellis (D. C.) 51 Fed. 808, 810; United States v. Lacher, 134 U. S. 624, 628, 10 Sup. Ct. 625, 33 L. Ed. 1080; Stephens v. Cherokee Nation, 174 U. S. 445, 480, 19 Sup. Ct. 722, 43 L. Ed. 1041.

Appellees claim that there is an irreconcilable conflict between sections 1 and 3. It will be observed that, if the words "has been or" and "is" were eliminated from section 1, the statute in all its sections would be absolutely clear and entirely harmonious. By a literal construction of those words, section 1 might, if standing by itself, be construed to apply to all prisoners who had been convicted and sentenced prior to the passage of the act, as well as to the prisoners convicted and sentenced after its passage. And if that was the intention of Congress, there was no necessity of inserting the third section. It would be entirely useless. Sections 1 and 2, standing by themselves, would be perfect and complete. They would represent the views contended for by appellees, and to give force and effect to these views section 3 would have to be entirely ignored. This would lead to an utter absurdity under the rules of construction which have been heretofore stated. Congress, in enacting section 1, clearly intended to define and fix the deductions from sentences for compliance with the rules of the prison and good behavior of prisoners. This was the main object and intent of the section, but incidental thereto the words "has been or" and "is" were used, which constitute the conflict in the sections. Section 2 of the act simply directs how good time lost by

the prisoner for failing to comply with the prison rules may be restored. Section 3 fixes the time when the act shall go into effect, and specifies the prisoners who will be entitled to the benefits of the act, and also the class of prisoners to whom the act shall not apply. This being true, how can it be said that Congress intended that no force or meaning whatever should be given to this section?

"This act shall take effect and be in force from and after thirty days from the date of its approval, and shall apply only to sentences imposed by courts subsequent to the time that this act takes effect." This language is clear, direct, and positive. There is no uncertainty about it. Again: "Prisoners serving under any sentence imposed prior to such time shall be entitled and receive the commutation heretofore allowed under existing laws." This is equally clear, plain, and positive, and the entire section expresses the real intention of Congress. It shows in positive terms that it was not intended by Congress that it should be retrospective; that it applied to the future, and not to the past. This is a congressional act and must be interpreted according to the intention of Congress, apparent upon its face. Every technical rule as to the construction or force of particular terms must yield to the clear expression of the paramount will of Congress. Wilkinson v. Leland, 27 U. S. 627, 7 L. Ed. 542; Oates v. National Bank, 100 U. S. 239, 244, 25 L. Ed. 580. When words occur in the statute which can be given no effect consistent with the plain intent of the statute, they must be rejected as without meaning. United States v. Stern, 5 Blatchf. 512, Fed. Cas. No. 16,389; Paxton v. Irrigation Co., 45 Neb. 884, 898, 64 N. W. 343, 29 L. R. A. 853, 50 Am. St. Rep. 585; Hilburn v. St. P. Ry. Co., 23 Mont. 246, 58 Pac. 551, 811; Gould v. Wise, 18 Nev. 253, 262, 3 Pac. 30; Edwards v. D. & R. Co., 13 Colo. 59, 62, 21 Pac. 1011; Henderson v. W. & P. Ry. Co., 81 Mo. 605, 607; Sedg. Con. Stat. (2d Ed.) 201.

As was said by Justice Brewer, in Long v. Culp, 14 Kan. 412, 414:

"It is also a rule of construction that, when one section of a statute treats specially and solely of a matter, that section prevails in reference to that matter over other sections in which only incidental reference is made thereto. Not because one section has more force as a legislative enactment than another, but because the legislative mind having been, in the one section, directed to this matter, must be presumed to have there expressed its intention thereon rather than in other sections where its attention was turned to other things." Wellsburg v. Panhandle T. Co. (W. Va.) 48 S. E. 746, 751.

Another well-settled rule of construction applicable to these cases is that, where there is an irreconcilable conflict between different parts of the same act, the last in the order of arrangement will control. Hall v. Equator M. & S. Co., Fed. Cas. No. 5,931; In re Richards, 96 Fed. 935, 939, 37 C. C. A. 634; In re Tune (D. C.) 115 Fed. 906, 911; Brown v. County Commissioners, 21 Pa. 37, 42; Hand v. Stapleton, 135 Ala. 156, 162, 33 South. 689; City of Westport v. Jackson, 69 Mo. App. 148, 153; Sutherland, Con. St. § 220.

One of Puffendorf's rules of construction is that:

"When we meet with a seeming repugnancy in the terms, conjectures are necessary to work out the genuine sense, by reconciling it if possible, to those terms that seem to be repugnant. But if there be a clear, evident repugnancy, the latter vacates the former." Pot. Dwar. Stat. 132.

Another rule is that "where laws are really repugnant, the judges should embrace that which is clear, in preference to that which is obscure." Pot. Dwar. Stat. 133.

In Reynolds v. McArthur, 2 Pet. 417, 434, 7 L. Ed. 470, Chief Justice Marshall, in delivering the opinion of the court, said:

"It is a principle, which has always been held sacred in the United States, that laws by which human action is to be regulated look forwards, not backwards; and are never to be construed retrospectively, unless the language of the act shall render such construction indispensable."

We have thus far confined ourselves to the language of the act. Some stress, however, upon the argument by appellees, was laid upon the letter of the Attorney General addressed to the chairman of the judiciary committee of the House, requesting the passage of the act, and it is argued that the object and purpose of the law, as expressed by the Attorney General, supports the views contended for by appellees. This letter is as follows:

"Sir: Under the present practice with regard to the commutation for good conduct allowed United States prisoners, there is no uniformity whatever, and experience has shown the necessity for some modification of the statutes governing this subject. United States convicts confined in United States prisons, as well as in some local institutions, are allowed five days on each month of the term, without regard to its length. If confined in a state institution, however, which has a commutation system of its own, they are subject to the terms of that system. It thus happens that one class of United States convicts can earn but sixty days a year, even if the sentence is for ten years, while others, elsewhere confined, earn a much larger reduction. In order to correct this evil, and to place all United States prisoners on an equal footing in this respect, I submit herewith draft of a bill for an act regulating commutation for good conduct in the case of United States prisoners."

This letter is clear in its terms. It relates to the inequality of sentences under existing laws, and recommends that all federal prisoners should be placed on an equal footing. There is nothing in the letter indicating that it was to be applied to past cases, and the language used, by the ordinary interpretation of words, would be that it was to be applied to the future, and that all convictions and sentences of federal prisoners thereafter should be equal and harmonious in the allowance of the commutations of the sentences for good behavior, without reference to the local laws and institutions in which the prisoners should be confined. There is no expression in this letter in opposition to the views we have expressed. There is nothing in the history of affairs which was presented to Congress, when the statute was passed, that gives any aid in support of the construction for which appellees contend.

In United States v. Byers (D. C.) 127 Fed. 993, 998, will be found a letter written by Attorney General Knox prior to the passage of this act, addressed to the Attorney General of Pennsylvania with reference to the question whether or not the rule of commutation of sentences under the Pennsylvania act of May 11, 1901 (P. L. 166) is a "rule of credit" within the meaning of section 5544 of the Revised Statutes [U. S. Comp. St. 1901, p. 3722]. In the course of this letter it is said:

"The Pennsylvania act suggests another and more serious question—whether any commutation can have any application in our constitutional system to sentences previously imposed. Upon principle and authority, a commutation is, in effect, the exercise of the pardoning power, at least so far as pre-existing sentences are concerned. The power of the legislative department of the government to thus affect the action of the judicial and the prerogative of the executive has been questioned in many states"—citing several authorities.

The court, after quoting this letter in full, said:

"Since the foregoing letter was written, Congress has acted upon the subject, and has passed the act of June 21, 1902 * * * which now applies to all sentences imposed after July 21, 1902."

This expression of the court may be considered dictum. It is not referred to as authority, but tends to show the trend of thought that would naturally arise upon reading the entire act as to the intention of Congress.

It appears from the Congressional records that the question as to whether or not the law should apply to previous sentences was raised. Senator Hoar, chairman of the judiciary committee of the Senate, after the passage of the law, said:

"With the leave of the Senator from California, I should like to make one statement about the bill which has just passed. I received a great many communications from different parts of the country saying that it ought to apply to cases of prisoners sentenced heretofore, and undoubtedly that would be quite desirable, but there was a very serious doubt in the minds of members of the committee of the constitutional power of Congress to pass a bill of that sort which should apply to sentences heretofore imposed. Therefore the committee thought it unwise to include such a provision."

The orders and judgment of the Circuit Court herein appealed from are reversed.