## Firearms for Pardoned Criminal

GORNISH, *Attorney General,* MOSLEY, *Deputy Attorney General,* December 20, 1978—An opinion has been requested by Colonel Paul J. Chylak, Commissioner of the Pennsylvania State Police, as to whether a person who applies for certification under section 6(f) of the Act of October 10, 1974, P.L. 705, 22 Pa.C.S.A. §46 (known as the Lethal Weapons Training Act and hereinafter referred to as the "act"),[1] is eligible for such certification when he has been convicted of a crime of violence but has received a pardon for that crime. The Commissioner has asked this question for the

---

1. Section 6(f) of the act provides:

"After the application has been processed and if the commissioner determines that the applicant is eighteen years of age and has not been convicted of or has not pleaded guilty or nolo contendere to a crime of violence, and has satisfied any other requirements prescribed by him under his powers and duties pursuant to section 5, he shall issue a certificate of qualification which shall entitle the applicant to enroll in an approved program."

reason that the State Police are charged with the duty of administering the act.

The resolution of this important question requires that we first address the effect of a pardon generally. In view of the fact that this is the first Attorney General's opinion to discuss the effect of a pardon, we have deemed it appropriate to direct this opinion to you, and are sending copies to Lieutenant Governor Ernest P. Kline and the other members of the Board of Pardons, as well as to Colonel Chylak.

A pardon can have two possible effects, which are separate and distinct. A pardon can exempt the recipient from further legal penalties and disabilities which flow from a conviction and restore all civil rights; it can also obliterate the record of conviction, leaving no evidence of the recipient's guilt. If a pardon does both things, it has the same effect as an acquittal.[2] If a pardon does not do both things, it will generally end the punishment and restore the civil rights only.

The Pennsylvania Supreme Court, in the case of Diehl v. Rodgers, 169 Pa. 316, 322, 32 Atl. 424

---

2. It should be noted that even a state pardon which has both effects does not inherently remove all the disabilities imposed by Federal law. In Thrall v. Wolfe, 503 F. 2d 313 (7th Cir. 1974), cert. denied, 420 U.S. 972 (1975), the court upheld the denial of a firearms manufacturer's and dealer's license under the Act of June 19, 1968, 82 Stat. 231, as amended, 18 U.S.C.A. §923, to one convicted of assault with a loaded pistol who was later granted a pardon by the Governor of that state. The court held that language in 18 U.S.C.A. §925(c) indicated a legislative intent that a pardon was not to be conclusive. The result in Thrall is not required, however, by another section of the same law, 18 U.S.C.A. §1203(2), which provides an exemption from a prohibition regarding receipt, possession or transportation of

(1895), adopted the view of a pardon which ascribed to it both effects. In holding that a convicted perjurer who was later pardoned is competent to testify, the court quoted the following language from the United States Supreme Court in Ex parte Garland, 71 U.S. 333 (1866), in which this view was first espoused:

"'A pardon reaches both the punishment prescribed for the offense and the guilt of the offender, and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense . . . it removes the penalties and disabilities, and restores him to all his civil rights.'" Id. at 380 of 71 U.S.

The language from Garland was quoted again in Com. v. Quaranta, 295 Pa. 264, 145 Atl. 89 (1928), where the court was met with appellant's contention that the lower court had committed error by permitting the impeachment of his testimony on cross-examination by the introduction of the evidence of a conviction for which he was pardoned. The court rejected this argument and, notwithstanding the broad scope it gave to a pardon in its discussion, held that both the conviction and the pardon may be the subject of examination where a defendant testifies in a criminal case.

In 1936, the Supreme Court of Pennsylvania harmonized its language with its holding, giving a

---

firearms found in 18 U.S.C.A. §1202 for "any person who has been pardoned by the President of the United States or the Chief Executive of a state and has expressly been authorized to receive, possess or transport in commerce a firearm." See United States v. One Lot of Eighteen Firearms, 325 F.Supp. 1326 (D.N.H. 1971). See also United States v. Kelly, 519 F. 2d 794 (8th Cir. 1975), cert. denied, 423 U.S. 926 (1975).

narrower effect to a pardon. In Com. ex rel. v. Smith, 324 Pa. 73, 187 Atl. 387 (1936), the court was faced with the issue of the applicability of a statute which provided for a greater sentence for a second offender to a convicted criminal who had been pardoned for a prior crime. In ruling that the statute applied, the court clearly modified the earlier view of the effect of a pardon. Relying upon a New York case[3] affirmed by the United States Supreme Court, the court stated: "'The pardon of this defendant did not make "a new man" of him; it did not "blot out" the fact or the record of his conviction. . . . The pardon in this case merely restored the defendant to his civil rights.'" 324 Pa. at 76, 77, 187 Atl. at 388, 389.

Cases decided after Smith reaffirmed the modified view of a pardon, though the broad language of Diehl continues to resurface in dicta. In Com. v. Cannon, 386 Pa. 62, 123 A. 2d 675 (1956), cert. denied, 352 U.S. 898 (1956), and Com. ex rel. Cannon v. Maroney, 419 Pa. 461, 214 A. 2d 498 (1965), the State Supreme Court held that a prior conviction for manslaughter in Maryland for which the individual was pardoned could be used for the purpose of aiding the jury in determining the penalty to be imposed for a crime committed in Pennsylvania. See also Com. v. Sutley, 474 Pa. 256, 378 A. 2d 780 (1977) (dictum); Com. ex rel. Banks v. Cain, 345 Pa. 581, 28 A. 2d 897 (1942).

In a more recent relevant case, Cohen v. Barger, 11 Pa. Commonwealth Ct. 617, 314 A. 2d 353 (1974), the Commonwealth Court was faced directly with the claim that a pardon should be taken

3. People v. Carlesi, 154 App. Div. 481, 139 N.Y.S. 309 (1913), affirmed 208 N.Y. 547, 101 N.E. 1114, affirmed 233 U.S. 51 (1914).

as having both effects. In this case the State Police refused to comply with the order of a lower court which provided for the expunction of a record of a conviction for which the plaintiff had been pardoned. The court did not adopt the early broad view of a pardon but ruled that a person who has received a pardon for a reason other than innocence is not entitled to have his criminal record expunged. Quoting from Smith, the court stated: "'The pardon in this case merely restored the defendant to his civil rights . . . But it did not obliterate the record of his conviction, or blot out the fact that he had been convicted.'" Id. at 620, 314 A. 2d at 354.

Just this year in the case of Com. v. Homison, 253 Pa. Superior Ct. 486, 385 A. 2d 443 (1978), the issue of the right of a pardoned offender to have his criminal record expunged was again raised. The Pennsylvania Superior Court,[4] citing Smith and Cannon, echoed Cohen and held that the grant of a pardon for reasons other than innocence does not entitle the person to have his criminal record expunged.[5]

---

4. In Com. v. Binder, 104 Montg. 282 (1978), the court, relying on dicta in Com. v. Zimmerman, 215 Pa. Superior Ct. 534, 536, 258 A. 2d 695, 696 (1969), allowed an expungement of a record *after* a pardon had been granted. This holding is deemed inconsistent with the cases discussed in this opinion, and has been appealed. With respect to expungement, see the Criminal History Record Information Act of November 26, 1978, sec. 302.

5. The two most recent cases just mentioned, Cohen and Homison, imply not only that a *pardon for innocence* blots out the record of conviction but also that such a pardon constitutes a presently identifiable subset of all those that have been granted. This notion was derived from Com. v. Cannon, supra, 386 Pa. at 66, 123 A. 2d at 678, and an article which attempted

The decisions in Smith, Cannon I, Cannon II, Cohen, and Homison make clear the distinction between a pardon which has the effect of exonerating the recipient from legal penalties and disabilities, restoring civil rights and expunging the record of conviction and one which does no more than exonerate and restore civil rights. These cases also demonstrate that the Pennsylvania courts have abandoned the view expressed in Diehl, supra, in favor of a more restricted view of a pardon.

What this means is that where a conviction involves certain disqualifications, the pardon removes such disqualifications. Such disqualifications generally include, but are not limited to, incompetency to testify, ineligibility to vote, ineligibility to serve as a juror, ineligibility to become a naturalized citizen, and ineligibility for certain licenses or privileges.

The case of Agosto's Petition, 84 Pitts.L.J. 177 (W.D.Pa. 1936), is one of the earliest in which the restorative effect of a pardon upon its recipient's civil rights was discussed. Here the Naturalization Bureau opposed the application for citizenship of Gerlando Agosto who had been convicted of second degree murder, but was later pardoned, on the grounds that he was not of good moral character. Drawing in part upon the language in Garland, the

---

to make distinctions based on pardons for innocence: Weihofen, The Effect of a Pardon, 88 U. of Pa. L. Rev. 177 (1939). Practically, however, the Board of Pardons does not recommend pardons based on innocence and is not in a position to go behind a verdict of guilt. Accordingly, while it is conceivable that a pardon for innocence might be granted, before the grant could be made on this basis, the Board of Pardons would require the submission of evidence of the recipient's innocence that is direct and incontrovertible.

court held a conviction of second degree murder for which a person was pardoned could not be pleaded against him to bar him from naturalization as a United States citizen.

The fact that a person has been granted a pardon and is thereby exonerated from further punishment and restored to all his civil rights does not, however, automatically give such a person a good reputation for honesty, integrity, and fair dealing. So, where character is a necessary qualification and certain conduct would disqualify a person even though there were no criminal prosecution for the crime, the fact that an offender had been pardoned would not make him any more eligible.

An examination of the section of the act in question here reveals that there is no requirement that a determination as to the character of the applicant be made and no mention of an applicant's participation in acts of violence for which there has been no criminal prosecution. In the words of the statute, the Commissioner, after finding that the applicant is 18 years old, is bound only to determine that the person "has not been convicted of . . . a crime of violence . . ." It is the fact of conviction alone which triggers the disqualification of the applicant under section 6(f).

A pardon, in exempting the recipient from further legal penalties and disabilities and restoring all civil rights, was clearly meant to remove all disqualifications such as the one found in section 6(f) which flows solely from the fact of conviction.

Nothing in the foregoing discussion is intended to suggest that the Board of Pardons may not grant a pardon on the condition that the person who receives it *not* carry a gun so as to prevent such a person from becoming eligible for certification under section 6(f). The granting of such a condi-

tional pardon is within the power of the board and the recipient of it would be bound to its limitations. However, absent such a condition, the rule in Pennsylvania is that a pardon removes all disqualifications involving guns.[6]

Nor should the discussion be taken to mean that a person granted a full pardon may not be found ineligible for certification on some ground other than the fact of conviction in accordance with the requirements found in another section of the act. The record of conviction of a pardoned person may be used as evidence of character in some circumstances: Com. v. Quaranta, supra.

Moreover, it is clear that a person who has received a pardon may not state that he or she has never been convicted of a crime when that question is properly posed, as on certain employment or license applications. The proper answer requires an affirmative admission coupled with the statement that a pardon has been granted.

Therefore, it is our opinion and you are so advised that a person who has been granted a pardon for a crime of violence is eligible for certification under section 6(f) of the Lethal Weapons Training Act. Furthermore, such a person shall have the right to own a firearm and to have one in his possession unless the pardon expressly provides otherwise.

---

6. This rule is consistent with the views of the members of the Board of Pardons pursuant to discussion. It is important because of cases like United States v. Kelly, 519 F. 2d 794 (8th Cir. 1975), cert. denied, 423 U.S. 926 (1975). That case held that a state pardon does not allow a person to possess a firearm under 18 U.S.C.A. §1202(a)(1) unless the pardon expressly authorizes such possession: 18 U.S.C.A. §1203(2). By virtue of this opinion, all pardons are deemed to allow such possession unless they are otherwise qualified.