UNITED STATES v. FARRAR.

(Circuit Court of Appeals, Second Circuit. May 24, 1905.)

No. 236.

PRISONS—ALLOWANCE FOR GOOD TIME—FEDERAL STATUTE.

Act June 21, 1902, c. 1140, 32 Stat. 397 [U. S. Comp. St. Supp. 1903, p. 448], provides in section 1 that each prisoner "who has been or shall hereafter be" convicted of any offense against the United States, and imprisoned therefor, shall be entitled to an allowance of good time, as therein specified. Section 3 provides that the act shall apply "only to sentences imposed by courts subsequent to the time when this act takes effect." *Held* that, the two provisions being in direct conflict, the third section, being the later, and also the more specific, must govern, and that the act does not apply to prisoners sentenced before its passage.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Prisons, § 26.]

Appeal from the District Court of the United States for the District of Vermont.

For opinion below, see 133 Fed. 254.

James L. Martin, for the United States.
L. C. Moody and John H. Seuter, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. This appeal from an order in habeas corpus discharging the relator presents a question of the proper construction of the act of Congress of June 21, 1902, c. 1140, 32 Stat. 397 [U. S. Comp. St. Supp. 1903, p. 448], entitled "An act to regulate commutation for good conduct for United States prisoners."

May 19, 1900, the relator was convicted of a criminal offense against the laws of the United States, and sentenced to imprisonment in the House of Correction at Rutland, Vt., and was in confinement in execution of that sentence when the act of Congress took effect. If the act was applicable to prisoners who had been convicted and were in confinement at the time when it took effect, the commutation for good conduct therein specified would have entitled the relator to be discharged. If the act was not applicable to such prisoners, the court below erred.

The act, so far as it is material, reads as follows:

"Section 1. That each prisoner who has been or shall hereafter be convicted of any offence against the laws of the United States, and is confined, in execution of the judgment or sentence upon any such conviction, for a definite term, other than for life, * * * whose record of conduct shows that he has faithfully observed all the rules, and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence, to be estimated as follows: Commencing on the first day of his arrival at the penitentiary, prison or jail. [The section then specifies different commutations regulated by the term of sentence.]"

"Sec. 2. That in the case of convicts in any United States penitentiary the Attorney General shall have the power to restore to any such convict, who has heretofore or who may hereafter forfeit any good time by violating any existing law or prison regulation, such portion of lost good time as may be proper in his judgment, upon recommendations and evidence submitted to him by the warden in charge. * * *"

"Sec. 3. That this act shall take effect and be in force from and after thirty days from the date of its approval, and shall apply only to sentences imposed by courts subsequent to the time that this act takes effect, and hereinbefore provided. Prisoners serving under any sentence imposed prior to such time shall be entitled to and receive commutation heretofore allowed under existing laws. Such existing laws are hereby repealed as to all sentences imposed subsequent to the time when this act takes effect."

The repugnancy between the first and third sections of the act is plain, and utterly irreconcilable. The court below based its opinion upon these reasons:

"The provisions of the second section, being wholly free, those of the third can be applied to them without touching the very express provisions of the first. This will leave all the words to have some operation, and somewhat reconcile what would otherwise be a plain contradiction."

In this we are unable to concur. The provisions of the second section are wholly independent of those of the first and third, and apply to all convicts who have "heretofore or may hereafter" vio-

late any prison regulations; thus distinctly specifying the class to which its provisions shall apply.

The single question is, which of the two repugnant clauses ought to be rejected? One rule of construction is that, where there is irreconcilable conflict between different clauses of the same statute, the last in order of position must control. Another is that the clause which is directed especially to the particular subject must prevail, as regards the subject, over those mentioning it incidentally. The authorities illustrating the application of these rules are collected in Vol. 26, Am. & Eng. Enc. of Law (2d Ed.) 619, 620.

The first section of the act treats of the general subject and conditions of commutation to prisoners. The third section relates exclusively to the time when the act shall go into operation, and the prisoners to whom it shall not apply. It exempts from the general class those prisoners serving under any prior sentence, and, to emphasize the meaning of Congress that the privileges of the act shall not extend to the exempted class, expresses that meaning twice, and in different terms. As the third section is more detailed, and more carefully expressed than the first, in respect to the prisoners who shall be entitled to the commutation, it must be presumed that it expresses the more matured judgment of the legislative mind upon that particular subject.

The repugnancy between the two sections would not exist if the words "has been or" had been omitted in the first section. Apparently section 3 was inserted as supplementary to the bill as originally framed. It is probable that when the third section was added these words were inadvertently retained.

We conclude that the relator was not entitled to the benefit of the act, and that the order of the court below was erroneous.

The order is accordingly reversed.