### Ex parte JACKSON.

(Circuit Court, W. D. Washington, N. D. September 14, 1905.)

PRISONS—ALLOWANCE FOR GOOD TIME—FEDERAL STATUTE.

> Act June 21, 1902, 32 Stat. 397, c. 1140 [U. S. Comp. St. Supp. 1903, p. 448], regulating commutation for good conduct for United States prisoners, should be construed to apply to prisoners sentenced before as well as after its passage, notwithstanding the direct conflict between the provisions of the first and third sections in that respect, in view of the purpose for which it was enacted, as shown by the records of Congress, which was to remedy the inequalities then existing by reason of the diversity of the laws of the several states and which then applied to federal prisoners confined in their prisons.

Application by a United States prisoner for discharge by writ of habeas corpus, under the provisions of the act of Congress entitled "An act to regulate commutation for good conduct for United States prisoners," approved June 21, 1902, 32 Stat. 397, c. 1140 [U. S. Comp. St. Supp. 1903, p. 448]. Hearing on the petition, writ, and return. Petition granted.

Wm. H. Brinker, Richard Saxe Jones, and J. B. Metcalfe, for petitioner.

Jesse A. Frye, U. S. Dist. Atty., for respondent.

HANFORD, District Judge. The petitioner was brought from Alaska to the United States Penitentiary on McNeil's Island, and has been incarcerated there, as punishment for a crime of which he was convicted in the district court of Alaska. The term of imprisonment fixed by the sentence of the court is 10 years, and it is the petitioner's contention that he is entitled to credit for good behavior to the extent of 10 days for each month, commencing on the first day of his arrival at the penitentiary, as provided by an act of Congress entitled "An act to regulate commutation for good conduct for United States prisoners," approved June 21, 1902, 32 Stat. 397, c. 1140 [U. S. Comp. St. Supp. 1903, p. 448]. The first section of said statute is clear, and not hard to understand. It provides:

> "That each prisoner who has been or shall hereafter be convicted of any offense against the laws of the United States, * * * whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his

sentence to be estimated as follows, commencing on the first day of his arrival at the penitentiary, prison, or jail, * * * upon a sentence of ten years or more, ten days for each month."

It is a conceded fact that the petitioner's conduct as a prisoner has been good, and that he has earned all of the deduction on account of good behavior which the laws of the United States allow to prisoners. The respondent under a sense of duty resists the petitioner's demand to be discharged from custody, on the ground that the sentence in his case had been passed prior to the enactment of the statute above quoted, and therefore said statute is not applicable to his case, and that under the provisions of sections 5543, 5544, Rev. St. U. S., and amendments in Act March, 1875, and Act March, 1891 [U. S. Comp. St. 1901, pp. 3721, 3722, 3727], in force when the petitioner was convicted and sentenced, he is entitled to be credited on account of good conduct five days for each month, and that the law does not allow any greater reduction in his favor.

This contention is based upon the third section of the act of Congress of 1902, which reads as follows:

"That this act shall take effect and be in force from and after thirty days from the date of its approval, and shall apply only to sentences imposed by the courts subsequent to the time that this act takes effect, as hereinbefore provided. Prisoners serving under any sentence imposed prior to such time shall be entitled and receive the commutation heretofore allowed under existing laws. Such existing laws are hereby repealed as to all sentences imposed subsequent to the time when this act takes effect."

There is an irreconcilable conflict between the provisions of the first and third sections; for, as already stated, the first section is clear, and its meaning unmistakable. The rule which it gives for computation of time for good behavior is applicable to the cases of prisoners previously convicted, as well as those who afterwards shall be convicted; and the third section is equally explicit in providing that the act shall take effect and be in force from and after a future date, and that it shall apply only to sentences imposed subsequent to that date. Therefore the right of the petitioner to be discharged depends upon the determination of the question whether paramount effect shall be given to the first section or to the last section of the statute. The antagonism of the two sections is emphasized by the divergence in the opinions of the courts which have had occasion to construe the law. In the Walters Case (C. C.) 128 Fed. 791, Judge Thomas, without discussing the question, held that the act does not affect persons sentenced before its enactment. In the Farrar Case (D. C.) 133 Fed. 254, Judge Wheeler said:

"If the first section did not expressly apply to each prisoner who has been convicted as well as to those who should be, the third section would plainly cut off the relator; and, if the third section did not expressly provide that the act should only apply to subsequent sentences, he would be left within the first section."

And then the learned judge proceeded to eliminate the antagonism of the two sections by severing the first and restricting the third as if it were a mere adjunct of the second section. The result of his decision, if sound, is to divide the statute into two parts, leaving the first section to stand by itself, as if it were a separate and independent enactment,

and the second and third sections constituting a detached and complete law.[1]

In view of the patent ambiguity of the statute itself, and the conflicting opinions in regard to it, it is necessary to refer to the congressional record to ascertain the purpose of Congress in enacting the law and give effect to the legislative intent. I find that the committee on judiciary of the House of Representatives made a report recommending the enactment of this law, saying: "Your committee believes that the legislation proposed by the bill is useful and necessary." The committee also submitted as a part of its report the following letter, written by the Attorney General:

"Department of Justice.

"Washington, D. C., May 12, 1902.

"Sir: Under the present practice with regard to the commutation for good conduct allowed United States prisoners; there is no uniformity whatever, and experience has shown the necessity for some modification of the statutes governing this subject. United States convicts confined in United States prisons, as well as in some local institutions, are allowed five days on each month of the term, without regard to its length. If confined in a state institution, however, which has a commutation system of its own, they are subject to the terms of that system. It thus happens that one class of United States convicts can earn but sixty days a year, even if the sentence is for ten years, while others, elsewhere confined, earn a much larger reduction. In order to correct this evil, and to place all United States prisoners on an equal footing in this respect, I submit herewith draft of a bill for an act regulating commutation for good conduct in the case of United States prisoners. The table used has been compiled from the laws governing this matter in the state of Massachusetts, and is believed to be just and equitable. In the administration of the laws as they are at present a great deal of discontent and dissatisfaction is caused among United States prisoners; especially when transferred from a state institution, where liberal commutations are allowed, to a United States prison, where they can be given but five days in each month, no matter how long their terms of sentence may be. It is hoped there will be no objection to the passage of the bill, as the necessity for the legislation is believed to be urgent.

"P. C. Knox, Attorney General.

"Hon. George W. Ray, Chairman Judiciary Committee, House of Representatives."

From the foregoing it is apparent that Congress was prompted to enact this law by the recommendation of the Attorney General, that the evil intended to be remedied by the enactment was inequality in the time which United States prisoners could earn by good behavior under the provisions of previous laws, and that the object of the law was to prescribe a uniform rule. If convicts under sentence at the time when the act became effective are denied its benefits, the evil intended to be remedied must continue until all convicts previously sentenced for long terms who are imprisoned in United States penitentiaries and jails, and all those confined in state prisons in which the time allowance is less liberal than the rule prescribed by this statute, shall have been discharged, and the object of the law cannot be accomplished for many years. For this reason it is my opinion that the true intent of the legislative mind in the enactment of this law is expressed in the first

[1] Reversed 139 Fed. 260.

section, and that the words of the third section limiting the application of the law to subsequent sentences, are to be deemed as an inadvertent expression, inconsistent with the object of the law.

The rule of construction which deems the latest expression of the legislative will in a statute as a repeal of all inconsistent laws previously enacted cannot be applied in this instance for two reasons, viz.: First. The limitation in the third section is inconsistent with the object of the law, because it continues for an indefinite time inequality, which is the evil intended to be remedied. Second. There was, in fact, no difference in time in the enactment of the first and third sections. The bill was not considered and voted upon section by section, but was acted upon as an entirety, except that one amendment which was recommended in the report of the committee above referred to was adopted by the House of Representatives by unanimous consent, and then the bill as amended was passed by the House without debate, without opposition, and without a roll call, and it was afterwards gulped by the Senate without mastication; that is to say, it was passed as a whole by unanimous consent, without a roll call, and immediately returned to the House without amendment. See Congressional Record, volume 35, pp. 6134, 7447, 7453. It is worthy of mention that immediately after the bill had been passed by unanimous consent in the Senate, Senator Hoar made the following extraordinary statement:

"With the leave of the senator from California, I should like to make one statement about the bill which has just passed. I received a great many communications from different parts of the country saying that it ought to apply to cases of prisoners sentenced heretofore, and undoubtedly that would be quite desirable, but there was a very serious doubt in the minds of members of the committee of the constitutional power of Congress to pass a bill of that sort which should apply to sentences heretofore imposed. Therefore the committee thought it unwise to include such a provision."

No person would seriously suggest the idea that prisoners have vested rights to suffer punishment, which may not be abridged by the shortening of terms of imprisonment without violating the national constitution; and if a law abbreviating terms of imprisonment may be regarded as an infringement of the power to grant pardons, pertaining to the executive branch of the government, an objection on that ground would apply as well to any statute affecting future convictions as to a law applicable to cases in which sentences had been previously passed. The constitutionality of this law in either of its phases has not been attacked, and as the first section does clearly and unmistakably include cases of prisoners sentenced previous to the enactment of the law, the above-quoted remark must have been one of the pleasantries for which the facetious senator from Massachusetts was noted. At any rate, as the remark was not made until after the bill had been passed, it affords no ground for supposing that either the Senate or House of Representatives intended that the first section should be understood otherwise than according to the sense of the words used in its construction.

For the reasons above set forth, I direct that an order be entered granting the petition, and that the prisoner be discharged.