MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Petitioner, v. DISTRICT COURT OF SAN JUAN ET AL., Respondents.

No. 1012. Argued May 6, 1935.—Decided May 24, 1935.

*Benjamin J. Horton, Attorney General,* and *Luis Janer, Deputy Attorney General,* for petitioner. *Walter Rivera, A. Quirós Méndez,* and *R. López Gutiérrez* for the Civil Service Commission. *Guerra-Mondragón & Soldevila* for the respondent Gallardo.

Mr. Justice Córdova Dávila delivered the opinion of the court.

The Treasurer of Puerto Rico, Hon. Manuel V. Domenech, upon written charges, suspended from office and pay the employee Arturo H. Gallardo, examiner of collectors' offices in the Department of Finance, and granted him a term to answer such charges in writing.

After the answer was filed and a public hearing held with the appearance of Mr. Gallardo, the Treasurer found the charges proved and dismissed the employee in question, who then resorted to the Civil Service Commission, contending among other things that he had been permanently dismissed without any charge against him having been filed with, or heard by, the commission, and without any intervention by the commission in the matter, all in violation of the provisions of section 28 of the Civil Service Act and of Rule 42 of the regulations pursuant thereto.

The Civil Service Commission addressed a communication to Mr. Domenech, advising him that Mr. Arturo H. Gallardo had appeared before it asking for a review of the case, and that September 24, 1934, had been set for the parties to appear and explain their respective positions and to produce all the oral and documentary evidence which they might have. Mr. Domenech answered, denying that the commission had any power whatever to investigate the case, since it did not involve a dismissal for political or religious reasons.

On October 23, 1934, the commission, upon the evidence presented before it, and upon the grounds set forth in the opinion handed down in connection therewith, decided:

"1. To exonerate, as it does hereby exonerate, Arturo H. Gallardo from all the charges made against him by the Hon. Treasurer of Puerto Rico; and

"2. To order, as it does hereby order, the Hon. Treasurer of Puerto Rico immediately to reinstate the aforesaid Arturo H. Gallardo in his office of Examiner of Collectors' Offices, Bureau of Accounts and Office of the Paymaster, Department of Finance, with all the rights of a permanent employee in the classified civil service of Puerto Rico, such reinstatement to be effective as of the date on which he was suspended from office and pay and thereafter dismissed, March 19, 1934."

The Treasurer of Puerto Rico applied to the District Court of San Juan for a review of the orders above transcribed. That court after hearing the parties, dismissed the petition for review and affirmed the order appealed from. Feeling aggrieved by that decision, the Treasurer of Puerto Rico has asked this court to review the same in the instant certiorari proceeding, basing his petition for the writ on the following grounds:

"Since the removal by the Treasurer of Puerto Rico of Arturo H. Gallardo was not upon religious or political grounds, the Civil Service Commission has no power to order his reinstatement, and consequently its order to that effect was entered without jurisdiction; and as a result thereof, said commission being without jurisdiction to enter such order of reinstatement, the District Court of San Juan had no jurisdiction within that proceeding to affirm such order and to order the reinstatement of Arturo H. Gallardo in his employment as Examiner of Collectors' Offices in the Bureau of Accounts and Office of the Paymaster of the Department of Finance.

"Since the Civil Service Act authorizes the Civil Service Commission to reinstate an employee or officer removed by an appointing officer only when the removal is due to reasons of a political or religious nature, as a result thereof the District Court of San Juan, in entering judgment affirming the order of reinstatement made in favor of Arturo H. Gallardo by the Civil Service Commission, acted without authority of law and exceeded its jurisdictional power and authority.

"Since the procedure followed for the reinstatement of Arturo H. Gallardo is not in accordance with the act, because Arturo H. Gallardo raised no question before the Civil Service Commission that his removal was due to reasons of a religious or political nature, and because he was not removed for such reasons, the commission

had no power to hold, as it did hold, a trial *de novo* and to enter an order upon the evidence presented to it, thus substituting its own discretion for the discretion of the appointing officer, particularly when its powers are limited in such cases to a review of the evidence presented before such officer and of the other matters appearing in the record, for the purpose of determining whether the removal was due to reasons of a political or religious nature. As a result of the foregoing, the judgment of the district court before referred to, based on the evidence presented before the commission, is contrary to the procedure provided for by law.''

The fundamental question raised by the petitioner in this case is, that in accordance with section 28 of the Civil Service Act, the commission has the power to reinstate an officer or employee who has been dismissed only in the event that, after hearing, it appears that such removal was due to reasons of a political or religious nature. It is not alleged by Mr. Gallardo that his removal was due to political or religious reasons. There is not in the record, certainly, the slightest trace of evidence that might be so interpreted. Basing himself on such absence of proof, the petitioner contends that the Civil Service Commission acted without authority when it ordered the reinstatement of the employee in question.

Section 28 of the Civil Service Act, copied in its entirety in the case of *Pérez* v. *Garrido, Commissioner,* (*ante,* p. 445), is divided into three paragraphs. The first establishes the principle that no person holding an office or place in the classified service shall be removed or discharged from his office except for just cause, upon written charges and after opportunity to be heard in his own defense. Such charges may be filed by any superior officer or by any citizen, and shall be heard, investigated, and determined within thirty days after filing, by the commission or by some person or board appointed by the commission to hear, investigate, and decide said charges.

It should be noted that the Spanish text suppresses the conjunction ''and'' which ought to follow the word ''citizen,''

and that as the last part of this paragraph is drafted, the charges shall be presented within thirty days after they have been filed, which is senseless. Logically and naturally, the charges are presented at the moment they are filed, and this being so, it is impossible that they could be presented within thirty days after filing. We have also taken note that the Spanish text suppresses the words "or by some person or board appointed by the Commission to hear, investigate and determine the same."

In the second paragraph it is provided that the first paragraph shall not limit the power of any superior officer to suspend a subordinate for a reasonable period, not exceeding thirty days, pending hearing and decision. The suspension must be without pay, but the commission has the authority to investigate it, and in case of its disapproval, it has the power to restore pay to the employee so suspended.

Up to this point, we have spoken of superior officers and solely of suspensions, without the necessity of any great effort in interpreting the provisions of the first two paragraphs of section 28. It is really the third paragraph which is confused and offers difficulties of interpretation. The section which we are now discussing draws a marked distinction between a superior officer and an appointing (*nominador*) officer. The former is granted the power to suspend; the latter the power to suspend and dismiss. The English text uses the words "appointing officer," meaning an officer who has a power of appointment. The words "appoint" and "nominate" are not synonymous, although there are some situations in which the latter term may be used to mean appointment. *Harrington* v. *Pardee,* 1 Cal. A. 278, 82 Pac. 83, 84; 46 C. J. 484. In the instant case both the English and Spanish texts refer to an officer who has a power of appointment.

It is an accepted rule that the power of appointment carries with it, as an incident thereto, the power to remove

"in the absence of statutory provision to the contrary." *Burnap* v. *United States,* 252 U. S. 512.

Section 28, far from providing the contrary, states that nothing therein contained shall limit the power of any appointing officer to suspend or dismiss a subordinate for any cause which will promote the efficiency of the service. It is argued, however, that the power to order a removal lies in the Civil Service Commission. This contention is based on the fact that the same section provides that there shall be filed with the commission written reasons for such suspension or removal and that the person whose removal is sought be given reasonable notice thereof and of any charges preferred against him, so that he may have opportunity to answer the same in writing and to file with the commission such proper evidence as he may deem necessary in his defense.

These provisions, and the succeeding ones, authorizing a review of the decision of the commission by the District Court of San Juan, upon the application of the aggrieved party, tend to introduce confusion and make for doubt and ambiguity in applying the rules of construction. These doubts, we feel, must be resolved in consonance with the general principle that the appointing officer has the power to remove, in the absence of statutory provision to the contrary. Here, as we have said, there is no such provision. There is, on the contrary, a provision which not only gives the appointing officer a power to suspend and remove, but also provides that nothing contained in the law shall limit this right; and it does not seem logical to assume, in the absence of a clear and explicit provision to the contrary, that the Legislature had the intention of destroying by implication what it has set forth so emphatically and expressly in the act.

If we interpret the provisions of the act now before us in the sense that the appointing officer must file the charges with the commission so that the commission may hear and

determine them, and thereafter render its decision, we would be depriving such officer of the power of removal granted to him by the act. If the Legislature had intended to deprive the appointing officer of a power which he has always had, it would not have distinguished between a superior officer and an appointing officer, granting to the former the power to suspend, and to the latter the power to remove. The Legislature, it seems, has sought to conserve the general principle, perhaps considering that the head of a department is the officer best qualified to determine whether the removal of an employee working under his orders would promote the efficiency of the public service or not, for which efficiency he is principally responsible. *Gil* v. *Chardón,* 41 P.R.R. 208.

The final portion of section 28 is explicit: The commission may reinstate an officer or employee so removed, only in case it appears, after hearing, that the removal was made for political or religious reasons. The English text uses the word "removal," and the Spanish "*separación,*" which is not exactly the same, since an employee may be separated for reasons not really amounting to a dismissal. Now, if the commission may only reinstate an officer or employee when the removal was made for political or religious reasons, why should there be a duty imposed upon it of investigating and deciding questions other than those of a political or religious nature? Is it possible to conceive that the act sought to charge this body with a completely useless task, one which can have no effect whatever, limited as it is to ordering the reinstatement solely when the removal of the employee has been on religious or political grounds? Really, we can not conceive how an intention which is so practically purposeless can be attributed to the Legislature. Moreover, it may not be said that the commission acts as an arbiter or referee, and that the appointing officer retains the right to make the final decision, since an arbiter is appointed when a question must be decided and not when it has already been decided, as is the case when an officer or employee has been once

dismissed. The power to reinstate granted to that body in cases in which religion or politics are involved, is an additional argument that emphasizes once more the authority of the appointing officer to remove, since without removal there can be no reinstatement, and when the act authorizes it, it does so because it goes upon the assumption that the appointing officer has exercised his powers by removing a subordinate for just cause. Nor can the proposition be accepted, as claimed by the commission, that the appointing officer may dismiss summarily, and that the commission is charged with the duty of deciding the case on its merits, since that officer, who may only dismiss for just cause, cannot destroy the rights of a subordinate by a summary dismissal. The employee is not without remedy merely because broader powers have not been granted to the commission. The act prescribes the procedure to be followed, and from its text the agencies called upon to protect the rights of the employee appear to be: for a removal for reasons of a political or religious character, the Civil Service Commission; for a removal, arbitrary and without cause, when religion or politics is not involved, the courts of justice. The appointing officer has no power arbitrarily to dismiss a subordinate. In the exercise of his duties, he must follow the provisions of the act, prefer charges, hear the employee, and remove him if necessary, when there is cause for removal. If he does not comply with the requirements of the law and, for reasons other than politics or religion, he arbitrarily orders a removal, the employee so removed may resort to the courts of justice to obtain due redress.

The last part of section 28 recommends itself for its precision and clarity and leaves no room for judicial construction. It is not possible, by mere speculation, to evade a provision so simple in terms and easily understood.

Emphasis is also placed upon section 22 of the Civil Service Act. That section refers to certification from lists of eligibles, and provides, among other things, that no person

certified and appointed in the manner provided for in the section shall be discontinued, suspended, given leave of absence from duty, transferred, or reduced in pay or grade, except for such reasons as will promote the good of the service, specified in writing and after an opportunity to be heard by the commission, and then only with its consent and approval.

These provisions appearing in section 22 require the commission to hear and consent; but do not grant to such body the right to judge and determine, unless it .be considered implicit in the power to hear. This power to decide seems to be granted to the commission in the first paragraph of section 28, when charges are made by any superior officer or any citizen. In this first paragraph no mention is made of charges formulated by an appointing officer. The commission is an administrative body having no inherent judicial powers. It cannot be recognized as having such powers unless they have been granted by law. Section 28, third paragraph, speaks of notification of the charges to the employee, once the reasons are set forth which the appointing officer had for the removal, of an opportunity to be given such employee to answer the same, and of the decision of the commission. It seems reasonable to conclude from the context of the whole of this paragraph that such powers are given to the commission in case it be called upon to exercise its authority to order reinstatement of the employee dismissed, if it should appear that the dismissal was due to political or religious reasons. It is in case of removal for such reasons, by the appointing officer, that the commission seems to be invested with the quasi-judicial power to reinstate, which necessarily carries with it the power to decide. When questions other than religion and politics are involved, the intervention of the commission is vain and useless, since it can decide nothing with respect to the reinstatement of the employee dismissed.

■ The conflict which may exist between section 22 and the provisions to which we have referred in section 28, must be decided in favor of the latter section. When two portions of a statute are in conflict with each other, the latter portion of the statute in the order of arrangement will control. *United States* v. *Updike et al.,* 25 Fed. (2d) 746; *Building Supplies Corporation* v. *Wilcox,* 284 Fed. 113; *Staten* v. *State,* 80 S. E. 850; *United States.* v. *Jackson,* 143 Fed. 783, 789; *In re Richards,* 96 Red. 935, 939.

■ Reference is also made to Rule 42 adopted by the Civil Service Commission, which provides, among other things, that the commission may order the reinstatement of an employee dismissed, when it appears, after hearing, that the charges made against such employee or officer have not been proved, or that the removal was due to reasons of a political or religious nature. This rule of the commission is not strictly in accordance with the provisions of the act. The commission may reinstate when the removal is due to reasons of political or religious character, but not when in the judgment of the commission the charges are not proved. The act does not authorize this body to reinstate when in its judgment the charges are not proved, and consequently the rule which purports to add this new ground for reinstatement to the act, has no legal validity.

■■■ In the case of *Pérez* v. *Garrido, Commissioner, supra,* this court, in interpreting the third paragraph of section 28 of the Civil Service Act, expressed itself as follows:

"The question of the suspension is not decisive in this case. The decisive question is that of the removal decreed on November 14 by the respondent Commissioner, on the ground that the answer of the petitioner to the charges preferred at the time of the suspension was not satisfactory.

"Did the respondent Commissioner have the power to act as he did?

"The answer to that question requires a careful examination of the third or last—and most obscure—paragraph of the section.

"It begins by providing expressly that the general rule fixed in the first paragraph does not limit the 'power of any appointing officer to suspend or dismiss a subordinate for any just cause which will promote the efficiency of the service.' If it ended here, there would be no difficulty, but after a comma it continues thus: 'upon filing with the Commission written reasons for such action and giving the person whose removal is sought reasonable notice of the same and of any charges preferred against him, and an opportunity to answer the same in writing, and to file with the Commission such proper evidence as he may deem necessary in his defense,' and then the difficulty arises.

"Should it be understood that the lawmaker directed that the dismissal cannot be decreed until the charges are filed with the commission and the employee or officer against whom they are made is given an opportunity to appear before it? That construction finds support in the form in which the paragraph is drafted, but if it were adopted it would destroy the power of the appointing officer which is recognized at the beginning, and which has always been acknowledged, subject, of course, to the limitations upon its exercise which are required by justice. The appointing officer would be limited to the preferment of charges. It would be the commission which would have the power to remove after investigating them.

"What the paragraph under consideration goes on to provide as to the procedure and review of the decision of the commission by the courts, does not help much in determining the exact intent of the Legislature. The final provision, to wit: 'The Commission may reinstate an officer or employee so removed only in case it appears after a proper hearing that the removal was made for political or religious reasons,' gives the key, in our opinion, to the final decision of the problem, because reinstatement cannot exist without removal, and because the lawmaker himself speaks of the employee or officer removed, that is, already removed when the commission begins to act.

"Thus the logical construction, the one which gives life to every provision contained in the act and which conforms to the precedents and the adjudicated cases, is that which recognizes the power of the appointing officer to remove for just cause, which implies the preferment of charges and an opportunity to defend before the officer himself, the record being sent to the Civil Service Commission, which keeps a record of all of the employees and officers of the Island and before

which the employee or officer removed has a new opportunity to defend himself and obtain his reinstatement in case the removal was due to political or religious reasons.

"The theory of the petitioner is that the respondent alone could not remove her. In our opinion he could, according to the construction we have just given to the statute.

"If the respondent Commissioner had acted in an arbitrary manner in exercising his power, without preferring charges or giving an opportunity to answer them, we would agree that mandamus would lie without the necessity of awaiting the action of the commission, but in our view the trial court did no err in finding that here charges were preferred and an opportunity for answering them was given to the petitioner who actually did answer them in writing. It makes no difference that the matter began with the suspension and that the second instead of the third paragraph of section 28 of the Civil Service Act was erroneously referred to. The suspension was a preliminary step which could and did lead to the removal. The law was substantially complied with."

This case has been discussed amply and in detail in the interesting briefs filed by the Civil Service Commission and by the attorneys for the intervener Arturo H. Gallardo. We have examined all of the arguments made by the interested parties and have reached the conclusions set forth in this opinion after a careful study of all of the questions raised. Arturo H. Gallardo was removed by the Treasurer of Puerto Rico after charges had been filed against him and after a hearing was had at which he was represented by counsel. As we have already said, there is not the slightest trace of proof in the record that the removal was due to reasons of a political or religious nature. The commission, consequently, had no power to order the reinstatement of the employee.

The judgment of the District Court of February 4, 1935, in the case giving rise to this proceeding, as well as the order of the Civil Service Commission of October 23, 1934, must be set aside.

Mr. Justice Wolf concurs in the result.

Mr. Justice Wolf, concurring.

In the case of *Pérez v. Garrido, Commissioner, ante,* p. 445, by way of dissent I expressed my opinion that it was the general intention of the Civil Service Act to grant the Civil Service Commission ample powers, and that said act transferred the right to hear charges on any and all cases, whether political or religious or not, from the executive head to the commission. My idea was, or is, that the Civil Service Commission can only order the restitution when the removal is based on religious or political motives. On the other hand, I was of the opinion that the Civil Service Commission had a right to hear the charges and to act on all other cases in an advisory capacity. In the present instance the commission made its report, so to speak, to the Treasurer, but the Treasurer still insisted on removing the petitioner. As I read the Civil Service Act, the Treasurer had a right to make a removal despite the report, and therefore I agree with the decision of the majority.