### ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### FOR THE

### COUNTIES OF PLYMOUTH, BARNSTABLE, BRISTOL AND DUKES COUNTY.

---

## EBENEZER G. PERKINS *versus* JAMES STEVENS.

A pardon of one convicted and sentenced for an infamous offence, restores his competency as a witness. A remission merely of his punishment does not restore his competency.

TROVER. At the trial, before *Wilde* J., the plaintiff offered in evidence the deposition of Alexander D. M'Kenzie ; to which the defendant objected, on the ground that M'Kenzie was incompetent as a witness, having been convicted in the Municipal Court, at Boston, of the crime of forgery. The plaintiff then produced a paper, denominated by E. D. Bangs, the secretary of the Commonwealth, " A copy of the original charter of pardon," dated June 5th, 1827, whereby the governor, with the advice of the council, " remitted " to M'Kenzie, " the residue of the punishment he was sentenced to endure " in the State prison. The defendant still objected to the admission of the deposition, contending that the competency of M'Kenzie was not restored by this " charter of pardon," as it is called. But the objection was overruled, and the deposition permitted to go to the jury. Whereupon a verdict was found for the plaintiff.

If the deposition was properly admitted, judgment was to be entered on the verdict ; if not, a new trial was to be granted.

*W. Baylies* and *A. Bassett*, for the defendant.

*Oct. 23d, 1833*

*Warren* and *Battelle*, for the plaintiff.

MORTON J. delivered the opinion of the Court. The conviction of the witness rendered him incompetent. A general pardon would unquestionably restore his competency. Gilb. Ev. 256, 260 ; 2 Stark. Ev. 715, 720. The executive, during the execution of the sentence upon the witness, remitted to him " *the residue of the punishment he was sentenced to endure.*" What effect did this act of clemency have upon the civil disability of the convict ?

That it is the intention of the executive to make a distinction between the effect of the remission of a part of a sentence, and of a pardon of the offence, is manifest from the difference of the language used in the two cases. In the latter, the words are, " we grant unto him, the said A. B., a full pardon of his said offence, and restore him to the rights and privileges which he forfeited by the conviction aforesaid." When, therefore, the executive intends to remove the civil disqualification, the intention is explicitly declared. And although the effect of a full pardon might be the same without this declaration, yet the use of it in the one case makes the omission of it in the other clearly indicative of an intentional limitation in the exercise of the pardoning power.

It only remains to inquire, whether the executive has authority to make this distinction ; and whether the different acts warrant it.

The power of pardoning offences is conferred on the executive, by the eighth article of the second chapter of the constitution. It is general, and extends to all cases except convictions by the senate, on impeachment. This exception proves the comprehensive nature of the power. The only limitation to its exercise is, that pardons shall not be granted before conviction. The general power necessarily contains in it the lesser power of remission and commutation. If the whole offence may be pardoned, *a fortiori*, a part of the punishment may be remitted or the sentence commuted. If an absolute pardon may be granted, of course a conditional one may be. This discretionary power is clearly recognised in the Revised Statutes, *c.* 142, § 12, and *c.* 144, § 31. The former section authorizes the executive, " upon the petition of

the person convicted, to grant a pardon upon such conditions, with such restrictions, and under such limitations, as he may think proper." And the latter recognises the existence of the same power, by undertaking to regulate its exercise. It provides that the pardon of a convict whose sentence was a disqualification for office, shall not restore him, "unless it shall be so expressly ordered by the terms of the pardon." This plainly acknowledges the power of the executive to remove or not, at his discretion, even the statute disqualification, and to restore to office a convict who has by his conviction been removed from it.

But it is argued by the plaintiff's counsel, that as the disqualification is no part of the sentence, but a necessary consequence of the conviction ; so the restoration of civil rights is no part of the pardon, but an inseparable incident or an inevitable effect of it. It is said that the executive may pardon or not, at his discretion, or grant a pardon on such terms and with such qualifications and conditions as he may think proper ; but that the effect upon the rights of the convict is a legal consequence of his act, over which he has no control. And that an express limitation or restriction in the charter of pardon would be entirely ineffectual. In support of this view, the case of *The People* v. *Pease*, 3 Johns. Cas. 333, has been relied upon. This case stands alone on this point ; but we do not think it necessary or useful to revise it ; because it does not seem to us to have any decisive bearing upon the question under consideration. In the opinion given, it is said, "with respect to the power of the executive to annex conditions and restrictions to pardons, I do not perceive that my doctrine destroys it. Those conditions and restrictions may be imposed, in various ways, without involving the absurdity which I have stated ; and without impairing the executive power of making full evidence of the reformation of the convict, a condition precedent to a general pardon. The punishment may be mitigated, or it may be changed from imprisonment to voluntary transportation ; but every condition and restriction annexed to a pardon, must be reasonable and consistent with the sound rules of law." Whether the doctrine here laid down supports the judgment, or not, we perceive no reasonable objection to it. See *Deming* v. *Daniels,* 10 Johns. R. 232.

The power of the executive to remit a part of a sentence, leaving the residue to be executed, is unquestioned. If a convict be sentenced to fine and imprisonment, or to solitary imprisonment and confinement to hard labor, the executive may remit the one kind of punishment without interrupting the execution of the other part of the sentence. And such partial remission cannot be extended beyond the limitations fixed to it. It is only a full pardon of the offence which can wipe away the infamy of the conviction, and restore the convict to his civil rights. If a remission of part would restore competency, what part would have that effect? Would the remission of a few days' solitary imprisonment restore a convict sentenced to the State prison for life?

We think the view taken by a former distinguished law officer of this Commonwealth, whose long experience in the administration of criminal law gave to his opinions the weight of authorities, are correct and sound. He says, " there is but one mode now in use, of restoring the competency of a witness, and that is by pardon under the great seal of the State ; " " which, when *fully* exercised, is an effectual mode of restoring the competency of a witness. It must be *fully* exercised to produce this effect ; for if the *punishment* only be pardoned or remitted, it will not restore the competency, and does not remove the blemish of character. There must be a *full and free pardon* of the *offence*, before these can be restored and removed." Davis's Justice, 101. See 1 Phil. Ev. (7th ed.) 27 ; 2 Hawk. P. C. c. 37, § 49.

We are all of opinion, that the pardon in this case did not restore the competency of the witness, and therefore that his deposition was improperly admitted.

*New trial granted.*