HENRY FOREMAN, and BENJAMIN FOREMAN *et al.*, Appellants, *v.* FREDERICK M. BALDWIN, Appellee.

APPEAL FROM SUPERIOR COURT OF CHICAGO.

The right of a court to propound questions to a witness is undoubted, and it is discretionary with the court, whether further questions, as by way of cross-examination, shall be allowed.

The pardon of the Governor does not restore a person convicted of larceny, to his previous position as a citizen, or to his competency as a witness.

THIS was a special action on the case, for fraud and deceit by the Foreman Brothers, defendants in the court below, concerning an agreement with Baldwin, plaintiff below, by which they agreed to sell and deliver to him, clothing and dry goods amounting, at New York or eastern manufacturers' prices, with fifteen per cent. added, to the sum of $7,500, in exchange for a house and lot in the city of Chicago. The declaration contains four special counts, and one count in trover. The fraud and deceit, as alleged, consist in the falsely and fraudulently naming and giving of prices to clothing and goods, as New York or eastern manufacturers' prices, with only fifteen per cent. added, which were at least fifty per cent. above such prices; in falsely and fraudulently representing, that the prices so named and given were the same as those upon the New York invoices or bills of purchase; in false and fraudulent assurances and promises that they, the Foreman Brothers, stood ready to and would produce and exhibit to Baldwin such bills of purchase, and thus satisfy him that the prices so named and given by them were correct; in false and fraudulent promises and assurances that the goods selected should be marked at the correct prices, according to such bills, and properly packed in boxes, and delivered so packed; in fraudulently substituting and packing in boxes, in part, other inferior and different kinds and qualities of clothing, from the kinds selected upon which prices had been so by them named and given; in marking clothing and goods much higher even than the prices so fraudulently named and given, above New York or eastern manufacturers' prices; and in fraudulently stating, after the clothing and goods had been by them packed in the boxes, that the boxes contained the kinds, quality and quantity at the prices agreed, to make up the requisite amount, thus deceiving and defrauding Baldwin, and inducing him to accept and receive the boxes of clothing and goods so packed, as and for a fulfillment of the agreement by the Foreman Brothers, and to procure and deliver a deed of the house and lot, executed by Moss and wife, in whom was the legal title.

It appears from the testimony of witnesses, competent to judge of prices, that the Foreman Brothers, in fact, succeeded in putting off upon Baldwin goods at over one hundred per cent. above New York or eastern manufacturers' prices, from two and a half to three times as high as such manufacturers' prices.

One witness states that the articles he examined ranged from one hundred to two hundred per cent. above New York or eastern manufacturers' prices, and the evidence was abundant to show that this result was brought about by a cunningly

devised and skillfully executed scheme on the part of the Foreman Brothers, the defendants below.

It was proved, that by the agreement goods were to be delivered at New York or eastern manufaturers' prices, with only fifteen per cent. added, of sufficient quantity to amount to $7,500, in payment of the purchase price of the house and lot.

Baldwin was from the country. His principal business was farming, and his knowledge of merchandise and its value was very limited. This the Foremans understood, as Scanlan, one of the witnesses, informed them that "Baldwin was not much acquainted with goods, and very likely they could get a good price out of him, probably two thousand dollars more than they were worth;" and when Baldwin was inclined to be off about the trade, they were anxious to complete it; told him, "they wanted to make a fair, upright trade—let him have the goods at New York manufacturers' prices; that they wanted to keep him as a customer;" they told him so several times.. And when Hale, another witness, went to examine their goods and prices, they were at first shy of him; refused to talk with him; said they were dealing with Baldwin, and when he told them he was only there to examine the goods and prices, with reference to Tripp, trading for a portion of them with Baldwin, if Baldwin completed his trade with them, they professed to be willing to trade fair with Mr. Baldwin—" that he should have the goods at fifteen per cent. above New York or eastern manufacturers' prices, and said that if all he wanted was to look through the goods, he might do so." He looked over the clothing, and picked out or indicated to them the kinds Tripp wanted, and sufficient in quantity, as near as he could judge, to amount to $5,000. As they named over prices to him, Hale complained that they were too high, but that if they were to produce the bills of purchase, that was all he wanted. They said they would produce their bills, and he should have a fair and honest thing; "that they would bill off and box them up, and put the eastern manufacturers' prices to them what they were worth, and add fifteen per cent. to them, and make the bill out the next morning." This was Friday or Saturday. Hale was to come the next Monday and look the matter over.

Hale went to store again the next Monday, in the forenoon; found Baldwin and the Foreman brothers there. He asked them what they had done; they told him that they had gone on and selected a few of each kind that he (Hale) had selected, enough to make up the bill (that Tripp was to have of Baldwin.) They said that what he (Hale) had picked out came to about $3,000, and that they had selected a few of each kind that he had selected, enough to make up the complement. He asked

them if they had them billed off; they said that they would make out the bills, and would have it done pretty soon.

He went there in the afternoon with Tripp—asked them about the bill; they said it was not made out—they would have it done as soon as they could—that their book-keeper was out; they said they would make out a bill that day and produce the New York bill, and add the per centage, and everything should be done all right and straight; that they would attend to it all right—that they need not be alarmed—that they could get the goods the next day. Hale says Baldwin finished picking out his goods that day; that Monday afternoon, when he was there, the Foremans were boxing up the clothing and goods; several boxes were packed, and they were nailing them up.

During the interviews Hale had with the Foremans, they told him they manufactured their own clothing East. He asked them how their goods were bought. They said they bought their clothes low at cash, and manufactured as low as anybody could.

Hale testified, that when he went there Monday, in the forenoon, they were boxing up the goods; and nailing up the boxes; that when he left there in the afternoon, pretty much all the clothing and goods were boxed up. Hale also testified that on this Monday they said they had examined the title to the house and lot, and were satisfied with it, and Baldwin gave them the deed.

The next day, Hale went to Minnesota on business.

Some four or five days after Hale went to Minnesota, Tripp went to Foremans' store alone, with an order from Baldwin for that part of the goods that he was to have for Baldwin, and called for the goods. One of the Foremans said they were all right; they were put in boxes, and the boxes were all ready for him. Tripp asked for the bill of the goods, and was told that it was not made out, but that they would have it very soon— that they had been very busy, and had n't had time to make it out; he was requested to call again, and they would have the bill in a short time; he told them he wished to have it made as soon as they could. This was in the fore part of the day.

He went again the next morning, and called for the bill; was told by the clerk that it was not quite finished; he requested them to send the goods over to his store; they said they would, and sent them that day, and shortly after sent the bill.

Hale testified, that the goods were not as bought—not as he had picked them out; that they put in things he did not buy. Baldwin told them he was dissatisfied with the bargain, with the goods; he said they had not billed them to him as they

agreed to; that the goods were not as contracted for; that they should let him have them at New York manufacturers' prices, with fifteen per cent. added, but they had not done so. They said the trade was made, and that was all right; they had nothing to do with him further. He (Baldwin) said that he thought they ought to make it right, or do something in the matter. They said they had nothing to do with him, and would n't do anything with him, and that he could go away.

Hale told them the goods were not as contracted; that they had not billed them as they told him the prices; that they agreed to show him the bills, and had not done so. They said they had nothing to do with him, and that he might go away; and they went into their office and shut the door, and told him to leave the house. Hale wished to see the bills. They said they had nothing to do with him. Baldwin also inquired for the bills. No bills were produced. Baldwin told them his house and lot was worth all he asked for it in money, and he sold it to them cheap, and expected to have the goods in the same way. They said they had made the trade with him, and that was all they had to do with him; that they did not make two trades.

The appellants insist that the evidence in this case tends to show, that while negotiations were pending between Baldwin and Foreman, for the exchange of a house and lot, which Baldwin was to have of Moss, with Foreman for goods, and before any trade was completed, Tripp entered into an arrangement with Baldwin, by which Tripp was to take a portion of said goods, amounting to some $5,000, to be selected by Tripp's agent. That this arrangement was communicated by the parties thereto to Foreman, and it was assented to by him at the same time of assenting to the trade with Baldwin. That Tripp thereby became interested in the contract at the time of its inception as a contract.

In the progress of the trial, the defendants' counsel called as a witness on the part of the defendants, Adolph Katz, to whom the plaintiff's counsel objected as incompetent, giving in evidence the record of the Recorder's Court of the city of Chicago, showing that he was convicted in that court at the February term, A. D. 1859, for petit larceny. The defendants' counsel read in evidence a pardon, dated the 24th day of March, A. D. 1859, by Governor Bissell, of said Adolph Katz, fully pardoning and acquitting him of the said offense, and restoring him to all he had forfeited by reason of such conviction, which pardon was duly issued and under the great seal of the State of Illinois.

Defendants' counsel proposed to prove, by said Adolph Katz, that he was a porter in defendants' store at the time the goods were selected—that the same goods which plaintiff selected were put into the boxes, nailed up, marked and delivered according to the plaintiff's directions. The counsel for the plaintiff objected to the competency of the witness, which objection the court sustained, and refused to permit the witness to be sworn; to which decision the defendants' counsel excepted.

The release relied upon by the defendants below, is as follows:

"Whereas, I have sold to Rudolph Foreman the south thirty-one feet of lot number 4, in block thirteen, in Bushnell's addition to Chicago, the title of which was in John D. Moss, and John D. Moss having conveyed the same to said Rudolph Foreman: Now, I hereby acknowledge the receipt of the consideration of said premises of said Foreman in full for the same, and release and discharge from any further claim therefor.          F. M. BALDWIN. [SEAL.]

*September 13th,* 1858.

The court below permitted Hale to testify to his estimate, that the goods were one hundred per cent. and over, higher than they should be. Hale had not been examined upon either side as to his knowledge of the cost of material and manufacture. In answer to questions by the court, he specified the cost of material and manufacture, and said he made his estimate upon that calculation. Yet the court denied defendants' counsel the right of cross-examining him.

The court instructed the jury on the part of the plaintiff—

1. If the jury believe, from the evidence, that with respect to the goods which Tripp was to have, Tripp dealt with the plaintiff and not with the defendants, and that Hale selected goods merely for the accommodation of Tripp and the plaintiff, then the goods which were sent to Tripp are to be deemed sold by the defendants to plaintiff and not to Tripp.

2. If the jury believe, from the evidence, that the release, introduced in evidence by the defendants, was fraudulently obtained by them from the plaintiff, then such release is void.

To the giving of each of which instructions the said defendants' counsel excepted.

The defendants' counsel asked the following instructions:

1. If the jury believe, from the evidence, that while negotiations for the contract in question between the plaintiff and defendants were pending for the goods in question, and before such contract was completed, the plaintiff made a contract with Tripp to the effect, that if said contract with defendants was completed, said Tripp should take a portion of said goods at the store of the defendants, and pay plaintiff in other goods therefor; that Tripp should select the said portion at defend-

ants' store for himself; that said arrangement between plaintiff and Tripp was communicated by them to defendants, and they agreed to the same before the goods were selected, and the goods were selected in pursuance thereof by Tripp or his agent, then the plaintiff is not entitled to recover in this action in respect to the said portion of the said goods so selected by said Tripp.

2. That the recital in the release given in evidence by the defendants, is binding and conclusive upon the plaintiff—that he made the contract in question with Rudolph Foreman, and that he received the consideration for the real estate in question from him, and he is now estopped by the release from denying that the contract was made by Rudolph, and from claiming that the other defendants were parties to it.

Which instructions the court refused, and the defendants' counsel excepted.

5. If the jury believe, from the evidence, that before the goods in question were selected at defendants' store, the plaintiff made an arrangement with Tripp, by which he or his agent were to select a portion of said goods; that the plaintiff was present when his part of said goods were selected, and a portion of those which Tripp was to have; that he, plaintiff, assisted in selecting the same; that the same identical prices which the defendants charged for said goods, were then and there declared to him, and he knew what they were; that if Hale was the agent of said Tripp, and was present at the time of selecting the residue of the goods which were to go to Tripp, and assisted in selecting the same; that the same identical prices which the defendants charged for said goods, were then and there stated, and declared off in the hearing of said Hale; that after all of said goods were selected as aforesaid, the said plaintiff executed and delivered to defendant, Rudolph Foreman, the release dated the 13th September, 1858, read in evidence; such release is a bar to any recovery in this action on account of the manner of selecting, or the prices charged for said goods.

Which instruction the court refused to give in that shape; but having added thereto as follows: "This is the law, if the defendants delivered to the plaintiff and Tripp the same goods which had been selected, and used no fraudulent devices to mislead the plaintiff into an acquiescence, or into an acceptance of the goods," the court gave the instruction as qualified; to which qualification, defendants' counsel excepted.

6. That if the jury believe, from the evidence, that a portion of the goods in question were selected at defendants' store, under an arrangement made between plaintiff and Tripp, that the plaintiff should sell, and said Tripp should buy the same of

plaintiff for certain other goods, or the payment by Tripp of certain money for plaintiff; that such portions were in fact selected by Tripp or his agent, and set apart by Tripp or his agent, and the defendants for him, said Tripp; yet the plaintiff is not entitled to recover anything in respect of said portion so selected and set apart, although the jury believe, from the evidence, that the defendants, after such selection, interfered with said goods, by taking out a part, and substituting others in their place, or by changing the prices charged at the time of such selection.

Which instruction the court refused, and the defendants' counsel excepted.

7.  If the jury believe, from the evidence, that the release, read in evidence, was executed by the plaintiff, and delivered to the defendant, Rudolph Foreman, after the goods in question were all selected, and the prices thereof fixed, such release is a complete bar to the plaintiff recovering anything in this action on account of the manner of selecting or affixing the prices of said goods.

Which instruction the court refused to give in that shape; but having added thereto as follows: " Unless fraud or circumvention were used in obtaining the release," the court gave the instruction as qualified; to which qualification, the defendants' counsel excepted.

8.  If the jury believe, from the evidence, that the goods in question were the consideration for the premises and house and lot described in plaintiff's declaration; that after said goods were selected and put up in the condition in which the plaintiff or said Tripp received them, and the prices charged by defendants were affixed thereto, the said plaintiff executed and delivered to Rudolph Foreman the release read in evidence, such release is a complete bar to the plaintiff recovering for anything in reference to said goods, which occurred prior to the delivery of such release.

10.  If the jury believe, from the evidence, that Hale was the agent of Tripp in respect to the selection of a portion of the goods, and that he, before the goods were selected, informed Tripp that the price was too high, there can be no recovery in this suit, by reason of said portion of the goods in question being charged too high.

Which last two aforesaid instructions the court refused, and the defendants' counsel excepted.

The jury found a verdict for plaintiff, with $2,500 damages, and defendants' counsel moved for a new trial, which motion the court overruled.

20

The court rendered judgment for the plaintiff on the verdict, and the defendants appealed to this court, and assign for error, the following:

1. Admission of improper testimony.
2. Exclusion of proper and competent testimony.
3. Refusing to defendants' counsel the right to cross-examine the witness, Hale.
4. Excluding the witness, Katz.
5. The giving the several instructions on the part of the plaintiff.
6. The refusing instructions on the part of defendants, and qualifying those given on the part of defendants.
7. The overruling the motion for new trial.

VAN BUREN & GARY, and W. K. MCALLISTER, for Appellants.

FARWELL, SMITH & THOMAS, for Appellee.

BREESE, J. The evidence in this case, conclusively shows, in our judgment, that Tripp dealt with the plaintiff, and not with the defendants. The instructions given on behalf of the plaintiff were, therefore, right. The defendants were responsible to the plaintiff alone for the fraud they endeavored to commit, and which was fully proved. There was no contract or privity whatever between Tripp and the defendants, and he could not have a meritorious cause of action against them, but against the plaintiff only.

The instructions asked by the defendants were properly refused, and those given modified as they should have been. The defendants' theory, that Tripp was interested in the contract at the time of its inception as a contract, has nothing to stand on. He was a purchaser from the plaintiff, Baldwin.

The right of the court to examine a witness, after he has been examined by the parties, cannot be questioned, and it was a matter of discretion to permit a cross-examination. It cannot be assigned for error.

Upon the remaining point, the rejection of Katz as a witness, we are satisfied the governor's pardon did not restore his competency. It could not override that express provision of the statute which declares, most emphatically, that each and every person convicted of larceny, shall be deemed infamous, and shall forever thereafter be rendered incapable of holding any office of honor, trust or profit, of voting at any election, of serving as a juror, and of giving testimony. (Crim. Code, Scates' Comp. 405, § 174.)

The rule contended for by the defendants' counsel, that a pardon restores the competency, is limited to cases where the disability is a consequence of the judgment. But where the disability is annexed, by the express words of the statute, to the conviction, the pardon will not, in such case, restore the competency. It can only be done by act of the legislature. At every session, there are applications of this character.

We see no error in the record, and therefore affirm the judgment.

*Judgment affirmed.*