## ERNEST GOO *v.* HEE FAT.

### Nos. 2416 and 2417.

ARGUED FEBRUARY 18, 1941.    DECIDED MARCH 17, 1941.

COKE, C. J., KEMP, J., AND CIRCUIT JUDGE McLAUGHLIN IN PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY COKE, C. J.

These cases, involving the same parties and identical questions, are consolidated by agreement of parties. For a history of the cases prior to our former adjudication of them, see *Goo* v. *Hee Fat*, 34 Haw. 123, where this court held that the orders of the circuit court entered January 3, 1935, dismissing plaintiff's actions for want of prosecution should be set aside and the causes remanded. At a subsequent trial in the circuit court it was stipulated that prior to institution of the proceedings in the circuit court, Goo Wan Hoy assigned the promissory notes upon which the suits were founded to his son, Ernest Goo, but for the purpose of collection and suit only and that said assignee had no other interest in the causes of action. It was further stipulated that Goo Wan Hoy, in March, 1918, and prior to the institution of the actions, had been convicted of the crime of perjury in the circuit court of the first judicial circuit and was sentenced to imprisonment by the judge of said court and had served a term of imprisonment; that on December 24, 1920, the governor of Hawaii granted to said Goo Wan Hoy a full and free pardon. At the trial in the lower court, in March, 1939, Goo Wan Hoy was the sole witness offered by plaintiff. Upon objection by defendant the trial court held that Goo Wan Hoy was incompetent, by reason of his prior conviction of the crime of perjury, to testify as a witness. Plaintiff then offered to prove by the witness all of the material facts of his complaints. Upon objection by defendant of this offer of proof, the court denied the same upon the ground of incompetency and irrelevancy and again held that Goo Wan Hoy was incompetent to testify by reason of his conviction of the crime of perjury as

aforesaid. Plaintiff having rested, the court granted defendant's motion for judgment in favor of the defendant with costs. Written decisions were filed and on March 2, 1939, judgments were entered in both cases in favor of the defendant. Plaintiff filed exceptions to the decisions and judgment and the cases have now reached this court on writs of error.

The appellant has stated that the main question at issue is whether the lower court committed error in refusing to permit Goo Wan Hoy to testify and excluding his testimony and in refusing plaintiff's offer of proof on the ground that Goo Wan Hoy was incompetent to testify as a witness for the reasons stated and that the subsequent pardon of Goo Wan Hoy, before he was offered as a witness, did not remove such incompetency. The appellant urges that the rulings of the trial court complained of and set forth in his assignments of error were not only erroneous but also denied him the protection guaranteed by the due process of law provisions of the fifth and fourteenth amendments of the Federal Constitution. When these cases were formerly before us (see *Goo* v. *Hee Fat, supra*), there had been no ruling by the trial court upon the question of the competency of Goo Wan Hoy to testify as a witness and that question was not made the subject of any of appellant's assignments of error. It was mentioned for the first time in the briefs filed after the cases were here in the first instance and was thus injected into the proceedings informally and incidentally. The question was indifferently and inadequately presented and should have been ignored. And while the court in its opinion did discuss the divergent rules announced by the courts and text writers and expressed the view that under section 3823, R. L. H. 1935, a person convicted of the crime of perjury or subornation of perjury, although granted an executive pardon, is deemed insensible to the

obligation of an oath and therefore incompetent to testify, yet the reversal of the lower court was upon the sole ground that the circuit judge committed error in dismissing the causes for want of prosecution and upon that ground alone the orders of dismissal were set aside and the causes remanded for reinstatement. It is therefore clear that the expressions by the court on the effect of a pardon granted to a person convicted of the crime of perjury were at best dictum and in no sense became the law of the case. The doctrine of the law of the case is not applicable for the further reason that in the present appeal the appellant complains that by the exclusion of the testimony of Goo Wan Hoy he was denied the equal protection of the law in contravention of the due process provisions of the fifth and fourteenth amendments of the Constitution and involves the construction of a federal statute, namely, section 66 of the Hawaiian Organic Act. Thus a federal question is raised with the right on the part of the appellant to have an adverse decision by this court reviewed in the United States circuit court of appeals for the ninth circuit and hence this court is an intermediate court of appeal and under these circumstances, as held in *Sumitomo* v. *Hawaii Nosan,* 26 Haw. 517, 536, the doctrine of the law of the case has no application.

For a discussion of the distinction between *"res judicata"* and "the law of the case" and of the application of the latter doctrine, see *Southern Ry. Co.* v. *Clift,* 260 U. S. 316, 319, and *Reamer's Estate,* 331 Pa. 117, 200 Atl. 35.

We are now requested by appellant to reconsider our former ruling. The action of the trial judge in excluding the testimony of Goo Wan Hoy and denying appellant's offer of proof was undoubtedly influenced by what this court said in *Goo* v. *Hee Fat, supra,* on the question of the competency of a person, convicted of perjury and sub-

sequently pardoned, to testify in the courts of the Territory. We therefore deem it timely to re-examine the question and to the limit of our jurisdiction finally set at rest the law of a question which has been a troublesome one to the courts for centuries past. In this examination we are greatly aided by the ability and commendable industry of the present counsel for appellant in the preparation of the briefs filed by him.

Section 3823, R. L. H. 1935, reads: "No person offered as a witness shall be excluded by reason of incapacity from crime, perjury or subornation of perjury only excepted, or interest, from giving evidence either in person or by deposition according to the practice of the court, on the trial of any issue joined or of any matter or question, or on any inquiry arising in any suit, action or proceeding in any court, or before any person having by law or by consent of parties authority to hear, receive and examine evidence. But every person so offered may and shall be admitted to give evidence, notwithstanding that such person may or shall have an interest in the matter in question, or in the event of the trial of any issue, matter, question or inquiry, or of the suit, action or proceeding in which he is offered as a witness, and notwithstanding that such person offered as a witness may have been previously convicted of any crime or offense except as aforesaid."

At common law a person is incompetent as a witness if he has been convicted of an infamous crime and sentenced therefor. The Hawaiian statute modified the common law rule by lifting the barrier in all cases except perjury and subornation of perjury. As to those crimes, incompetency is prescribed, if at all, merely by implication and not by express language.

Section 66 of the Hawaiian Organic Act confers upon the governor of the Territory the authority to grant par-

dons or reprieves for offenses against the laws of the Territory.

It cannot be questioned that the doctrine sanctioned by this court in its former opinion has the support of the decisions of numerous courts. (See *Blakely* v. *Bearden,* 281 Pac. 952; *The People* v. *Evans,* 40 N. Y. 1; *Foreman* v. *Baldwin,* 24 Ill. 298; *Evans* v. *The State,* 7 Baxt. 12 [Tenn.].) 1 Greenleaf, Evidence (14th ed.), p. 470, says: "Where the disability is annexed to the conviction of a crime by the express words of a statute, it is generally agreed that the pardon will not, in such a case, restore the competency of the offender; the prerogative of the sovereign being controlled by the authority of the express law." (See also 2 Hargrave's Juridical Arguments, p. 221.) The general theory being that the statute of disqualification prescribes a rule of evidence, as stated by Hargrave, "the pardon exerts its full vigor on the offender; but is not allowed to operate beyond this, upon the rule of evidence enacted by the statute. The punishment of the crime belongs to the criminal code; the rule of evidence to the civil." 1 Greenleaf, *supra,* p. 471.

It was upon the authority of the foregoing that the doctrine in *Goo* v. *Hee Fat, supra,* was founded. A more extended investigation of the question, however, leads us to the conclusion that the better and more modern rule is that a full and free executive pardon restores to a party all civil rights enjoyed by him prior to conviction, including the right to be heard as a witness in the courts; that proof of prior conviction should go only to the credit or impeachment of the witness, not to the exclusion of his testimony.

3 Jones, Evidence (4th ed.), p. 1290, says: "There is authority for the proposition that the pardon does not restore the witness to competency where he has been convicted under a statute which expressly prescribes the

disability to testify as an incident of the judgment, it being competent for the legislature thus to modify the general rules of evidence. But this rule is generally disapproved." "The modern tendency of the courts is to broaden the field of the competency of witnesses and to restrict that of incompetency." 70 C. J. 106. (See also *Rosen* v. *United States*, 245 U. S. 467.)

In *Vance* v. *State*, 70 Ark. 272, 68 S. W. 37, 42, it is said: "We take this occasion, also, to call attention to the backward state of the law in this state in reference to the competency of witnesses convicted of felony. The statutes which render such witnesses incompetent belong to a class of antiquated laws which suppress evidence, and which the wisdom of modern ages has discredited and shown to be unreasonable and injurious. They are of the same class as the laws which formerly forbade the parties to the suit from testifying, and closed the mouth of the defendant on trial for his life, and should be repealed, as these laws have been repealed, for such matters should go only to the credit or impeachment of the witness, not to the exclusion of his testimony. There is no valid reason why a person who knows anything material to the decision of a case on trial should not be permitted to tell it, whatever may be his character, the jury being allowed to weigh his testimony in connection with his character and antecedents. These statutes not only suppress evidence, but the application of them often presents difficult and doubtful questions, which, being decided in the hurry of trial, frequently results on appeal in reversals, and in this way justice is often thwarted. There are very few states that now retain such laws, and we think our legislators might well consider whether they should not be repealed in this state also." (See 1 Wigmore, Evidence [2d ed.], p. 936 *et seq.*)

An able and exhaustive discussion of this question is found in *Diehl* v. *Rodgers*, 169 Pa. 316, 32 Atl. 424.

834

We quote from it as follows: "The main question is the competency of the witness Lindsay who had been convicted of perjury, but pardoned by the governor prior to the events to which he testified. The general rule is that a pardon does away with the future consequences of the criminal act, as completely as if it had never been committed. It is said in a case which will be noticed more fully hereafter (1 Parker's [N. Y.] Crim. Rep. 241) that the doctrine of restoration of competency is modern, and that the authority of COKE is against it, but that later HOLT and others established it. Passing by the obvious doubt whether any doctrine established by Lord Chief Justice HOLT can fairly be called modern, we find that what COKE says in Browne v. Crashaw, 2 Bulst. 154, is, citing 11 Henry 4, fol. 41*b*, that one attainted of felony but pardoned, is not a competent witness, for poena mori potest, culpa perennis erit. The authorities however, are unanimously against this maxim. 'If the king pardon these offenders they are thereby rendered competent witnesses, though their credit is to be still left to the jury, for the king's pardon takes away poenam et culpam in foro humano:' 2 Hale's Pleas of the Crown, 278. 'It is now settled that a pardon removes not only the punishment, but all the legal disabilities consequent on the crime:' 2 Russell on Crimes 975; 7 Bacon's Abridg., tit Pardon, H. (Bouvier's 12th ed. p. 416.) In England however a special exception is made in the case of perjury, where a distinction is taken between conviction on an indictment at common law, and on an indictment under the statute of 5 Eliz. cap. 9, which declares that no person so convicted shall thenceforth be received as a witness to be deposed and sworn in any court of record until such judgment be reversed: 2 Russell on Crimes, 604. The distinction appears to have been first made by Lord C. J. HOLT, who in Rex v. Greepe, 2 Salk. 514, says 'where

one is convict upon the statute it is part of the judgment
to be disabled (to be a witness) but at common law it is
only a consequential disability,' and he accordingly held
that the king's pardon removed the latter disability but
not the former.  This ruling he repeated in Rex v. Crosby,
2 Salk. 689; Rex v. Ford, 2 Salk., 691; and Anon., 3 Salk.
155.  It is now accepted as the settled law in England.
'A pardon removes not only the punishment, but all the
legal disabilities consequent on the crime . . . . wherever
the disability is a consequence of the judgment; but where
it is declared by an act of parliament to be part of the
punishment, as in the case of perjury on the 5 Eliz. c. 9,
the king's pardon will not make the witness competent :'
2 Russell on Crimes 975.  The American text writers have
generally followed this distinction without question, and
apparently without much consideration.  The ablest dis-
cussion to be found is in an article published in 1834 in
11 American Jurist, 356, signed 'G,' which perhaps may be
safely conjectured to be by Prof. Greenleaf, who was then
writing his work on Evidence, in which he adopts the
same view and quotes the article at considerable length.
The writer, whether Greenleaf or another, follows the
English distinction, but says with accurate logic and great
candor 'the soundness of the reason is not as apparent as
the justness of the exception. . . . If the culprit be sen-
tenced to a fine and imprisonment and the pillory and
the whole offense is pardoned, by what authority shall any
of these punishments be inflicted?  And if instead of the
pillory he is sentenced to incapacity as a witness, is the
case altered?  The pardon takes away the effect of the
judgment, and nullifies all its consequences.  Of what
importance is it then whether the incapacity makes part
of the judgment by statute, or follows it by the common
law? . . . . It would be more satisfactory therefore if a
reason for this exception could be found independent of

the form in which the sentence may have been awarded.'
Instead however of pursuing the true course and where
the reasons of a rule are altogether unsatisfactory, in-
quiring carefully into the soundness of the rule itself,
ratio legis anima legis, he proceeds ingeniously to find a
reason in the idea that while the disqualification to be a
witness is a part of the punishment, and may operate
severely against the convict, yet it may also be regarded
as a rule of evidence which is within the legislative prov-
ince to adopt or remove. The American courts however
have not accepted the rule or its reasons as unquestion-
ingly as the text writers. The diligence of counsel, and
my own investigation have only succeeded in finding two
cases which have followed the English rule. In Hough-
taling v. Kelderhouse, 1 Parker (N. Y.) Crim. Rep. 241,
the point was expressly raised and decided, on the line of
argument and largely on the authority of the article in
the American Jurist above quoted, but also on the words
of the New York statute, that one convicted of perjury
shall not be received as a witness unless the judgment be
reversed, while in regard to other offenses the incompetency
is declared unless pardoned, showing that the legislature
had pardons in contemplation, a point that will be noticed
hereafter in connection with our own statute. The other
case is Foreman v. Baldwin, 24 Ills. 298, which simply
rules the point on the English cases without discussion,
saying that competency can only be restored by the legis-
lature, and adding the surprising statement that 'at every
session there are applications of this character.' In Hol-
ridge v. Gillespie, 2 Johns. Ch. 35, the point appears, but
so briefly as a mere note at the end of the report, that no
satisfactory evidence can be got from it of the views of the
chancellor, KENT. On the other hand in Perkins v.
Stevens, 41 Mass. 277, it was held that a general pardon
would unquestionably restore competency destroyed by

conviction of forgery, and while the court held the pardon in that case to be only limited and partial, yet they say that the statute providing that a pardon should not restore qualification for office 'unless expressly so ordered by the terms of the pardon' plainly 'acknowledges the power of the executive to remove even the statute disqualification.' In Wood v. Fitzgerald, 3 Oregon, 568, it was held that the power of pardon given by the constitution being without limitation, a full pardon would restore the right to vote to one who had been convicted of arson, though the constitution itself declared that the privileges of an elector should be forfeited by conviction of any crime punishable by imprisonment in the penitentiary. These are the only decisions on the particular point, but in the long roll of cases, especially in our own state and in the Supreme Court of the United States, where the general subject has been most frequently and ably discussed from a great variety of points of view, there is nowhere any hint of such a restriction on the effect of a pardon. In Hoffman v. Coster, 2 Whart. 453, where the offense was passing counterfeit money, it is said, p. 468, 'One of the consequences resulting from the sentence was the disability of the party to be sworn as a witness; and when all the sentence is removed, together with the consequences of the sentence, except what had been suffered, this disability is removed. It cannot exist separate from the source from which it is derived.' And the general effect of all the cases is thus stated in Ex parte Garland, 71 U. S. 333, 380. 'A pardon reaches both the punishment prescribed for the offense and the guilt of the offender, and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. . . . It removes the penalties and disabilities, and restores him to all his civil rights.' In

this position of the adjudicated cases, we are left free to follow what seem to us the sounder and more weighty reasons. The English distinction is not substantial. All penal consequences of crime whether by common law or by statute are equally results of the transgression of the law, and even the common law consequences are historically presumed to be of statutory origin. There is no basis in sound reason for including one and excluding the other from the power to pardon. The reason assigned by COKE was repudiated by HOLT; the reason substituted by HOLT is shown by the writer in the American Jurist, already quoted, to be equally unsatisfactory; and with deference to the latter's evident learning and ability, his reason is little better. Mr. Hargrave in a very learned and elaborate discussion of this subject of competency, unfortunately not extending to the consideration of convictions on the statute, suggests a reason which is explanatory if not convincing. 'Where parliament imposes a disability, to attribute to the king singly a power of removing it, might at least approach to the assertion of a dispensing power in the crown,' referring to the great case in the reign of James 2d on the power of dispensing with the test act: 2 Hargrave's Juridical Arguments, 224. The king's prerogative of pardon is by the common law, but an act of parliament is supreme, and can change the common law in respect to prerogative as well as to other matters, and if it has done so, the prerogative is thereafter limited accordingly. This reason cannot apply to the American states under written constitutions, which are superior to the legislative power. The constitution of the United States gives the president power to grant pardons except in cases of impeachment, and 'the power thus conferred is unlimited with the exception stated, . . . . it is not subject to legislative control. Congress can neither limit the effect of his pardon, nor exclude from its exercise any

class of offenders. The benign prerogative of mercy reposed in him cannot be fettered by any legislative restrictions:' Ex parte Garland, 71 U. S. 333, 380. It is true there was a strong dissent in that case by nearly half the court, but it was based on the questions whether the qualifications of attorneys were matters for legislative or judicial control, and whether a disqualification imposed on an attorney by statute after his admission was an ex post facto law. There was no difference of opinion as to the power of pardon or the effect of its exercise upon all parts of the penalty or punishment. The constitution of Pennsylvania gives the governor the same unlimited power of pardon with the same single exception of cases of impeachment, though the exercise of the power is controlled by the condition precedent of a recommendation by certain officers conveniently known as the board of pardons. The constitution deals with the pardoning power not as a prerogative claimed by divine right, but as an adjunct to the administration of justice, recognized in all civilized governments as necessary by reason of the fallibility of human laws and human tribunals. The power so recognized is granted without distinction in regard to offenses or their consequences, and with no exception or limitation but the one noted, of impeachment. The fact that one is made shows that the subject of exceptions was considered, and therefore expressio unius exclusio alterius est. The power cannot now be further restricted, or its operation limited by legislation. Nor in fact has any such restriction been attempted. There is no conflict between the statute and the executive act in this respect any more than in any other. The act of 1860 says the person convicted of perjury 'shall be forever disqualified from being a witness in any matter in controversy,' but it also says he shall be fined and imprisoned. Both are statutory consequences of the conviction, and the remis-

sion of one is no more a violation of the statute than the remission of the other. The statute does not say in either case, 'unless he shall be pardoned,' because the legislature in enacting the statute was not contemplating the exceptional case of a pardon, nor considering its effect on any part of the act. The word 'forever' was introduced in the disqualification not with any reference to the effect of a pardon, but to show that it was not merely to run with the term of imprisonment, and to concur with the exception of the case of perjury in section 181 of the same act, providing that the endurance of the punishment shall have the effect of a pardon. The result of the two sections read together is that nothing shall remove the disqualification except a pardon, and this is the intent indicated by the commissioners who reported the criminal code, when they say that section 181 is new, and the object was previously attained through the pardon of the governor: Report, Purdon's Dig. ed. 1894, p. 563, note. The same views apply to the act of May 23, 1887, P. L. 158, relating to the competency of witnesses, etc. That is a careful revision and consolidation, by a very competent hand, of the whole law on the subject, and when in section 5 it provides that a person convicted of perjury shall not be a competent witness although his sentence may have been fully complied with, etc., it merely continues the law of the two sections of the act of 1860 already discussed, with an express provision as to the effect of a reversal of the conviction, which would have been the legal result even without such expression, and a humane exception in cases of injury to the convict's person or property. But this act did not, any more than the previous one, have any reference to the effect of a pardon. Even if this were less clear than it is as a matter of statutory construction, the argument ab inconvenienti would be very strong. Suppose Lindsay was the only witness to a murder, must justice be

baffled because of his disability? And yet how is it to be removed if not by a pardon? It is said in 24 Ills. 298, cited supra, that applications are made in that state to the legislature. Besides the practical difficulties in the delay and the running of the statute of limitations there would be other objections in this state. If such application be regarded as a pardon, the power is in the governor, not the legislature, and if it be regarded as a law, then it is special, and must run the gauntlet of the prohibitions against special laws relating to practice and evidence in judicial proceedings. For each and all of these reasons we are of opinion that Lindsay was a competent witness, and the learned court below was right in admitting his testimony."

In *Ex parte Garland*, 4 Wall. 333, 380 (U. S.) (cited in the *Diehl* v. *Rodgers* opinion), Mr. Justice Field, speaking for a majority of the court, said: "When the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." (See also *Hester* v. *Commonwealth*, 85 Pa. 139, 154, 155; *Roberson* v. *Woodfork*, 155 Ky. 206; *Perkins* v. *Stevens*, 24 Pick. 277, 278 [Mass.]; *Yarborough* v. *The State*, 41 Ala. 405; *State* v. *Kelleher*, 224 Mo. 145, 123 S. W. 551.)

A majority, if not all, of the decisions which adhere to the theory of disqualification come from jurisdictions expressly prescribing it. Only by implication can it be said that our statute, namely, section 3823, R. L. H. 1935, renders a person convicted of perjury or subornation of perjury incompetent to testify but were its provisions specific, or even mandatory, it would undoubtedly be held to be nothing more than a futile legislative attempt to abridge the power of pardon granted to the governor of the Territory by Congress by the provisions of section 66 of the Hawaiian Organic Act, not infrequently referred

to as the constitution of the Territory. This statute confers upon the governor an unrestricted power to grant pardons, which is not subject to legislative control. The legislature of the Territory can neither limit the effect of the governor's pardon nor exclude from its exercise any class of offenders. The benign prerogative of mercy reposed in him cannot be fettered by any legislative restrictions. (See *Ex parte Garland, supra,* p. 380.)

We are impelled, therefore, to recede from that part of the former opinion of this court in *Goo* v. *Hee Fat, supra,* which expresses the view that a person convicted of the crime of perjury or subornation of perjury, although granted an unconditional pardon by the governor of the Territory, is incompetent to testify in the courts of the Territory, and we hold that at the hearing in the court below the appellant was entitled to have the testimony of Goo Wan Hoy heard and his offer of proof should have been granted. In justice to the circuit judge from whose judgments these appeals are perfected, it should be said that in excluding the evidence and rejecting the offers of proof he acted strictly in conformity with the doctrine which this court had approved in the prior appeal.

The judgments appealed from are set aside and the causes are remanded to the circuit court for new trials.

*C. N. Tavares* (*S. B. D. Wood* with him on the briefs) for plaintiff.

*S. Landau* (*F. Patterson* on the brief) for defendant.